In the

# United States Court of Appeals

## For the Seventh Circuit

No. 02-2064

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

GEORGE KELLY,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 02 CR 118—**Suzanne B. Conlon**, *Judge.*

ARGUED NOVEMBER 14, 2002—DECIDED JANUARY 3, 2003

Before RIPPLE, ROVNER and DIANE P. WOOD, *Circuit Judges.*

RIPPLE, *Circuit Judge.* In April 2002, George Kelly was convicted of one count of possession of child pornography, 18 U.S.C. § 2252A(a)(5)(B). On appeal, he contends that the district court lacked subject matter jurisdiction to convict him because the child pornography statute was declared unconstitutional in *Ashcroft v. Free Speech Coalition*, 122 S. Ct. 1389 (2002). We disagree. *Free Speech Coalition* strikes down only the statute's expanded definition of child pornography to encompass virtual material. The Supreme Court of the United States did not disturb longstanding precedent sanctioning Congress' ban on tradi-

tional child pornography. Mr. Kelly was convicted of possessing traditional child pornography; accordingly, we affirm the judgment of the district court.

# I

# BACKGROUND

In January 2002, Mr. Kelly was charged by information with eleven counts of possessing child pornography, 18 U.S.C. § 2252A(a)(5)(B), and one count of shipping child pornography, 18 U.S.C. § 2252A(a)(1). The district court rejected Mr. Kelly's offer to plead nolo contendre to Count 3, one of the possession charges, and Count 12, the shipping charge, but accepted his guilty pleas to both. Mr. Kelly was part of a group characterized by the Government as "involved in the fetishistic abuse of children." The group's members lived in the United States and Canada and exchanged child pornography. Mr. Kelly sent "virtual" child pornography to other members of the group in exchange for "real" child pornography. Real or traditional child pornography contains images of real children; virtual child pornography contains images "that appear to depict minors but were produced without using any real children." *Free Speech Coalition*, 122 S. Ct. at 1396. Virtual images may be created by "using adults who look like minors or by using computer imaging." *Id.* When he was caught, Mr. Kelly's computer hard drive contained 29 images of child pornography. In addition, the Government had proof that he had shipped 40 images contained on computer disks to an associate in Georgia.

Following Mr. Kelly's guilty pleas but before sentencing, the Supreme Court decided *Free Speech Coalition*, which struck down portions of the Child Pornography Prevention Act of 1996 ("CPPA") as unconstitutional. *See id.* at

1405-06. In light of *Free Speech Coalition*, the Government moved to dismiss Count 12 because the charge had been based on Mr. Kelly's distribution of virtual child pornography. The district court granted the Government's motion and proceeded to sentence Mr. Kelly on Count 3 for his possession of traditional child pornography in violation of § 2252A(a)(5)(B). At sentencing, Mr. Kelly argued that the decision in *Free Speech Coalition* also required dismissal of the charge for possession of traditional child pornography, but the district court disagreed and sentenced him to 33 months' incarceration, 3 years' supervised release, a $10,000 fine and a $100 special assessment. The single issue on appeal is whether *Free Speech Coalition* invalidated the portion of the CPPA under which Mr. Kelly was convicted. *See* 18 U.S.C. § 2252A(a)(5)(B).

## II

### ANALYSIS

The constitutional viability of § 2252A(a)(5)(B) in light of *Free Speech Coalition* has not been addressed by this circuit. In 1996, Congress enacted the CPPA as one in a long series of amendments to the original Protection of Children Against Sexual Exploitation Act of 1977. *See generally Free Speech Coalition v. Reno*, 198 F.3d 1083, 1087-89 (9th Cir. 1999) (recounting history of the original act). The CPPA added computer disks that contain three or more images of child pornography to the existing list of prohibited media. *See* Child Pornography Prevention Act of 1996, Pub. L. No. 104-208, Title I § 121(3)(a), 110 Stat. 3009-29 (1996) (codified as amended at 18 U.S.C. § 2252A(a)(5)(B)). In 1998, this section was amended to encompass disks that contain a single image. Protection of Children from Sexual Predators Act of 1998, Pub. L. No. 105-314, Title II

§ 203(b), 112 Stat. 2978 (1998). Together these amendments make up the current statute under which Mr. Kelly was convicted. 18 U.S.C. § 2252A(a)(5)(B).

In addition to criminalizing possession of computer disks, the CPPA's more high-profile amendment was its expansion of the definition of child pornography to include "virtual" material. 18 U.S.C. § 2256(8)(B), (D). The older definition of child pornography had included only images of real children, but the expanded definition includes any image that "appears to be" of a minor or "conveys the impression that the material is or contains a visual depiction of a minor." *Compare* 18 U.S.C. § 2256(8)(A) *with* 18 U.S.C. § 2256(B), (D). In *Free Speech Coalition*, the Supreme Court struck down, as violative of the First Amendment, the provisions of the CPPA that expanded the definition of child pornography to include virtual images. *Free Speech Coalition*, 122 S. Ct. at 1405-06.

Mr. Kelly argues that his conviction should be overturned because, in his view, *Free Speech Coalition* rendered the *entire* CPPA unconstitutional and thus deprived the district court of jurisdiction to convict him under § 2252A(a)(5)(B), a section of the code added by the CPPA. We cannot accept this contention. Mr. Kelly's view conflicts with the opinion's language that specifically limits the ruling to the two provisions that expand the definition of child pornography to include virtual material. Further, the Court's First Amendment analysis logically applies only to virtual child pornography. Finally, other circuits have interpreted the *Free Speech Coalition* opinion as limited to virtual child pornography. In *Free Speech Coalition*, the Supreme Court considered whether the CPPA's regulation of virtual child pornography could survive a First Amendment challenge. In previous decisions, the Court had created standards for the regulation of adult

pornography as well as traditional child pornography. For regulations of adult pornography to square with the First Amendment, the regulated material must be obscene under *Miller v. California*, 413 U.S. 15, 24 (1973). *See Free Speech Coalition*, 122 S. Ct. at 1399-1401. Later, *New York v. Ferber*, 458 U.S. 747 (1982), held that child pornography, even if not obscene under *Miller*, could still be prohibited in accordance with the First Amendment because states have compelling reasons to regulate pornography that results from sexual exploitation of children. *Id.* at 761; *see Free Speech Coalition*, 122 S. Ct. at 1401-02. *Free Speech Coalition* reviewed the CPPA's attempt to regulate virtual child pornography, material that the Court determined was not necessarily obscene under the *Miller* test and was not the product of child sexual abuse because no minors were actually used to create it. *See id.* at 1396, 1405. The Court ultimately held the CPPA's attempt to regulate virtual child pornography unconstitutional under the First Amendment.

Throughout its opinion in *Free Speech Coalition*, the Supreme Court expressly limited the holding of the case to the expanded definition of child pornography. The Court noted that, prior to 1996, Congress had focused on images created using real children. The 1996 act "retains that prohibition . . . and adds three other prohibited categories of speech, of which the first, § 2256(8)(B), and the third, § 2256(8)(D), are at issue in this case." *Free Speech Coalition*, 122 S. Ct. at 1397. There are similarly explicit statements throughout the opinion. *See, e.g., id.* at 1406 ("For the reasons we have set forth, the prohibitions of §§ 2256(8)(B) and 2256(8)(D) are overbroad and unconstitutional.").

Further, the Court's reason for declaring a portion of the act unconstitutional logically applies only to the virtual child pornography definitions. The Court held the act

unconstitutional to the extent that it regulated images that are neither obscene under *Miller* nor child pornography under *Ferber. See Free Speech Coalition*, 122 S. Ct. at 1396, 1405. The decision was clearly directed at the expanded definition of child pornography and determined that virtual child pornography was different from real child pornography under First Amendment analysis. Regulation of traditional child pornography remains constitutional under the *Ferber* decision.

In addition to the language and reasoning of *Free Speech Coalition* suggesting a limited holding, the Eleventh Circuit has interpreted the *Free Speech Coalition* opinion as reaching only virtual child pornography. *See United States v. Richardson*, 304 F.3d 1061, 1063-64 (11th Cir. 2002) (jury instruction that defined child pornography to include both real and virtual images was not plain error because defendant possessed real images); *United States v. Hersh*, 297 F.3d 1233, 1254 n.31 (11th Cir. 2002) (noting that *Free Speech Coalition* applies only to virtual child pornography); *United States v. Bender*, 290 F.3d 1279, 1281-82 n.2 (11th Cir. 2002) (noting that *Free Speech Coalition* does not apply because defendant possessed actual child pornography).[1]

Counsel for Mr. Kelly invites our attention to two cases that the Supreme Court vacated and remanded for further

---

[1] We also note that the Third and Fourth Circuits have released unpublished orders interpreting *Free Speech Coalition* as applying only to virtual child pornography. *See United States v. Davis*, No. 00-3536, 2002 WL 1754429 (3d Cir. July 26, 2002) (Unpublished Order); *United States v. Maxwell*, No. 02-4353, 2002 WL 31324063 (4th Cir. Oct. 18, 2002) (Unpublished Order). Finally, in a statement not essential to its holding, the Fifth Circuit interpreted *Free Speech Coalition* as leaving intact the definition of actual child pornography contained in § 2256(8)(A). *See United States v. Reedy*, 304 F.3d 358, 365 n.3 (5th Cir. 2002).

consideration in light of *Free Speech Coalition. See United States v. Mento*, 122 S. Ct. 1602 (2002); *United States v. Fox*, 122 S. Ct. 1602 (2002), on remand, 293 F.3d 237 (5th Cir. 2002). Counsel submits that those cases involved actual child pornography, and the remand therefore suggests that the Supreme Court interprets its own *Free Speech Coalition* decision to affect convictions for possession of actual child pornography. Mr. Kelly reads far too much into the Supreme Court's very brief remand orders. The Court, as is its practice, simply directed the lower court to review its earlier decision in light of *Free Speech Coalition.*[2]

Because the language and reasoning of the *Free Speech Coalition* opinion relate only to the expanded definition of child pornography that brings virtual material within the scope of the act, the other sections of the CPPA can be severed and left intact unless it appears that Congress would not have enacted the constitutional portions of the statute alone. *See Minnesota v. Mille Lacs Band of Chippewa Indians*, 526 U.S. 172, 191 (1999). The CPPA has a savings clause evidencing Congress' intent to make the statute severable. Pub. L. No. 104-208, Title I § 121(8), 110 Stat. 3009-31 (1996) ("If any provision of this Act, including any provision or section of the definition of the term child pornography, . . . is held to be unconstitutional, the remainder of this Act, including any other provision or section

---

[2] *See* Robert L. Stern, Eugene Gressman, Stephen M. Shapiro, Kenneth Geller, *Supreme Court Practice* § 5.12 at 319 (8th ed. 2002) ("It seems fairly clear that the Court does not treat the summary reconsideration order as the functional equivalent of the summary reversal order and that the lower court is being told simply to reconsider the entire case in light of the intervening precedent—which may or may not compel a different result.") (footnote omitted).

of the definition of the term child pornography, . . . shall not be affected thereby."). The portion of the act under which Mr. Kelly was convicted regulates the possession of traditional child pornography and relies on the definitional section to define child pornography. *Free Speech Coalition* invalidated the two definitions that encompassed virtual child pornography, but the act still contains a valid definition of traditional child pornography at 18 U.S.C. § 2256(8)(A). Because regulation of real child pornography remains constitutional under *Ferber*, and Mr. Kelly possessed real child pornography, we affirm the judgment of the district court.

Finally, we note that, Mr. Kelly filed a motion to strike the statement of facts in the Government's brief because the Government included facts from and cited the confidential pre-sentence investigation report ("PSR"). We previously have permitted parties to cite the PSR in briefs in order to challenge sentencing decisions when the district court adopted the PSR as findings of fact for sentencing purposes. In *United States v. Strache*, 202 F.3d 980, 987 (7th Cir. 2000), we specifically noted that widespread use of the PSR for other purposes was improper; *see also United States v. Menting*, 166 F.3d 923, 928 (improper to use PSR to show jury had sufficient evidence to support its guilty verdict). Here, the Government included information from the PSR even though Mr. Kelly presents no issue about his sentencing. We thus remind all counsel that indiscriminate use of the content of the PSR is inappropriate. We further remind counsel that, when it is necessary to discuss sensitive sentencing information derived from the PSR, it may be appropriate to proceed under seal. *See generally In re Krynicki*, 983 F.2d 74, 75 (7th Cir. 1992) (briefs should be public, but confidential information may be included in a sealed supplement). However, in this particular case, the facts disclosed by the Government are

tangential, and we conclude that striking the entire state-
ment of facts would not be warranted.

### Conclusion

Accordingly, the judgment of the district court is
affirmed. The motion to strike is denied.

AFFIRMED
Motion to Strike DENIED

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*