**UNITED STATES of America, Plaintiff–Appellee,**

v.

**James Stanley FULLER, Defendant–Appellant.**

No. 02–3303.

United States Court of Appeals, Sixth Circuit.

Oct. 9, 2003.

Before GUY and DAUGHTREY, Circuit Judges; and LAWSON, District Judge.*

GUY, Circuit Judge.

Defendant, James Stanley Fuller, appeals following his conviction by a jury on four counts: (1) attempting to entice a minor by computer or telephone to engage in criminal sexual activity (18 U.S.C. § 2422(b)); (2) interstate transportation of photographic computer files from Georgia to Ohio depicting minors engaged in sexually explicit conduct (18 U.S.C. § 2252(a)(1)); (3) interstate transmission of photographic computer files by computer depicting minors engaged in sexually explicit conduct (18 U.S.C. § 2252(a)(1)); and (4) possession of photographic computer files that had been transported in interstate commerce depicting minors engaged in sexually explicit conduct (18 U.S.C. § 2252(a)(4)(B)). Defendant, who chose to represent himself, was sentenced to a term of imprisonment of 135 months to be followed by a two-year term of supervised release.

Through appointed counsel, defendant challenges his sentence on the grounds that the district court failed to make adequate factual findings and erred in its application of the guidelines. In addition, counsel contends (in an argument also made in defendant's *pro se* filings), that defendant's convictions on counts 2, 3, and 4 must be vacated under *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 122 S.Ct. 1389, 152 L.Ed.2d 403 (2002), because the government failed to prove that the depictions in the computer files were of actu-

---

* The Honorable David M. Lawson, United States District Judge for the Eastern District of Michigan, sitting by designation.

al human beings. Although sometimes repetitive and undeveloped, defendant's *pro se* filings include arguments against the admission of evidence obtained illegally from America On Line (AOL) or as a result of an illegal search of the apartment where he had been staying, and several challenges to his convictions on what appear to be sufficiency of the evidence grounds. For the reasons discussed below, we affirm defendant's convictions and sentence.

## I.

Defendant came to the attention of the FBI after two adult females, Margaret Dudas and Marjorie Vizurraga, reported his preoccupation with having sex with minors. Both women made contact with defendant over the Internet through the instant messaging (IM) service offered by AOL and communicated with him by e-mail and telephone before meeting him in person.

Fuller used the screen name "Blueey0123" to communicate with Dudas through AOL. During one telephone conversation with Fuller, Dudas received an IM from someone using the screen name "K9Teacher" that forwarded a picture of a dog in a sexual position with a woman. Dudas later realized that she heard the AOL chimes on Fuller's end of the line each time "K9Teacher" communicated with her, but when she blocked messages from "K9Teacher" the chiming stopped. Fuller met Dudas at her home and, after consensual sex, commented on a photograph of Dudas's 14–year–old daughter. When Fuller asked about sex between Dudas and her daughter and expressed interest in having sex with them both, Dudas threw him out.

Fuller communicated with Vizurraga through AOL using the screen names "Stan046" and "Blueey0123." Fuller, who said he trained major league baseball players around the country, stayed with Vizurraga in Cleveland during their brief relationship. She testified that she ended their relationship after about a month because of his preoccupation with sex and his desire to have her participate in sexual acts with multiple partners, including a 15 year-old female babysitter.[1]

FBI Special Agent Brian Vigneaux began investigating Fuller. Vigneaux learned from another FBI office that an earlier AOL account in Fuller's name had been terminated for having transferred child pornography. In answer to an administrative subpoena, AOL advised that Fuller had been a member of AOL since February 27, 2000, and used screen names including "Blueey0123," "April0435," and "K9Teacher01."

With this information, Vigneaux connected to the Internet via AOL and, using the undercover screen name "Peaches14kwl," added "Blueey0123" to the account's IM "buddy list." On July 12, 2000, Vigneaux made contact with defendant and relayed that "Peaches" was almost 14 years old and lived with her mother. Fuller said he was 48 years old, and they exchanged photographs. Vigneaux sent Fuller a photograph of Special Agent Kelly Liberti, which had been taken when she was 14 years old and in which she was dressed as a cheerleader. As the session continued, Fuller asked "Peaches" to call him on the telephone and discussed, in sexually explicit terms, her body, mother/daughter sex, masturbation, and other

---

1. Both Dudas and Vizurraga testified explicitly about what Fuller had said about sexual acts he wanted them to perform on underage girls while he participated. Fuller, representing himself at trial, cross-examined both of them.

sexual acts they could do together.[2] After this contact, Fuller traveled from Georgia to Cleveland, Ohio, taking his laptop computer with him.

During their next IM session on July 17, 2000, Fuller told "Peaches" that he was in Cleveland and was staying with a major league baseball player. He asked about meeting with her, offered to take digital pictures of her, and questioned her in explicit terms about her sexual activity and asked if she had sex with a 13–year–old girlfriend. Fuller again asked that she call him on his cellular telephone. Vigneaux arranged to have Agent Liberti call a few hours later, posing as "Peaches" and identifying herself as "Brianna." Fuller asked her age again and was told she was "almost 14." Fuller tried to arrange for them to meet that night, told her they could have privacy, promised that they would go slowly, and talked explicitly about sex.

Fuller contacted "Peaches" by instant messaging on July 19, 2000, and suggested that they could meet while her mother was at work. He accused her of being a "talker and not a doer." At the end of the session, she agreed to call him 30 minutes later. Liberti called Fuller as agreed, telling him she could ride her bicycle to meet him the following afternoon after her mom left for work. Fuller asked about her mom's age, looks, and if she was dating anyone. He also asked in explicit terms about specific sex acts; including multiple partners, domination, sex with dogs, sex with other girls, and mother/daughter sex. When Liberti expressed interest, Fuller agreed to e-mail her some pictures of things they were talking about. They dis-

cussed arrangements for their meeting the next day, and Liberti agreed to call him as soon as her mother left for work. Fuller later sent "Peaches" an e-mail with two pictures of women having sex with dogs.

The next morning, July 20, Fuller and "Peaches" conversed by instant messaging about where and when they would meet and what they would each be wearing. Fuller e-mailed "Peaches" several more sexually explicit pictures; including one Fuller told her was of a 13–year–old girl.[3] Fuller said she could meet two Cleveland Indian baseball players after he picked her up, explaining that he would say she was the daughter of a friend, and told her that they then could go to the apartment where he was staying to be alone. About 30 minutes later, Liberti called Fuller and they arranged to meet at a nearby marina. Fuller said he would be driving a white "Jimmy" and would be wearing a blue warm-up outfit. When Fuller arrived at the arranged meeting place, he was arrested.

Agents found handwritten notes referring to "Peaches" and giving directions to the meeting place, as well as receipts documenting Fuller's travel from Georgia to Ohio. They also found a digital camera, a blindfold, a cat-o-nine tails, and a prescription bottle containing Viagra. Agent Liberti located Russell Branyan, the baseball player with whom Fuller had been staying, and told him about the arrest. Branyan had known Fuller professionally for several years, but Fuller had never stayed with him before.

Branyan testified that Fuller spent a lot of time using the computer in the spare

---

**2.** Vigneaux employed a computer program to record all keystrokes by both participants to the IM session and another to capture the e-mails and pictures sent by Fuller. In addition, the FBI recorded the subsequent telephone conversations between Fuller and Agent Liberti.

**3.** That file was named "13 year old getting fucked and licking mom.bmp."

bedroom of the apartment. Although Branyan had asked Fuller to leave because he had continued to smoke cigarettes in the apartment, Fuller had not vacated before his arrest. Branyan offered to cooperate, gave them consent to search the apartment, and signed a consent-to-search form to that effect. When agents entered the apartment and looked in the spare bedroom, they saw a laptop computer that displayed the AOL sign-on screen for "Blueey0123" and nine "minimized" boxes showing partial file names. Although Branyan had given permission to remove Fuller's possessions, agents waited and obtained a search warrant before seizing defendant's Compaq Presario notebook computer.

Barry Gummow, a computer forensic examiner, was called to assist in the execution of the warrant. Gummow "maximized" the nine boxes so that photographs could be taken of the images, which included sexually explicit pictures involving both mother/daughter sex and sex with dogs. Grummow then shut down the computer and seized it for examination. On the computer, Gummow found evidence of child pornography downloaded through AOL from the Internet; Internet history files showing child pornography web sites visited by Fuller; and photographs of Fuller and other women, some taken with the digital camera seized at the time of his arrest. Among the pictures found on Fuller's computer were those that had been sent between Fuller and "Peaches."

Using the Tanner Scale of Pubertal Development, Dr. Douglas Rogers, a pediatric endocrinologist at the Cleveland Clinic, testified that 21 pictures taken from defendant's computer depicted minor females at or below Tanner Stage Four (for which the average age is 13), and that 13 of those pictures were of females at or below Tanner Stage One (for which the average age is 10). The government also offered the opinion of Douglas Rehman, an expert in computer forensics and child exploitation, concerning his examination of the images for evidence of alteration.

Arrested pursuant to a complaint and warrant on July 20, 2000, Fuller was detained without bond. After the indictment was filed on August 9, 2000, Fuller was arraigned and entered a plea of not guilty. Defendant's retained counsel withdrew, as did defendant's next two court-appointed attorneys. Defendant's third appointed counsel represented him before trial and then served as an advisor during trial because defendant had asserted his right to represent himself. That attorney was permitted to withdraw prior to sentencing, and new counsel served as defendant's advisor at sentencing and filed a brief on appeal. Timely notice of appeal was filed both by Fuller and by his appointed counsel.

## II.

### A. Denial of Motion to Suppress

[1] Fuller filed several motions to suppress evidence, which were denied in written memoranda and orders. In reviewing the denial of a motion to suppress, we review the district court's factual findings for clear error and the legal conclusions *de novo*. *United States v. Atkin*, 107 F.3d 1213, 1216 (6th Cir.1997). In his *pro se* filings, Fuller argues that the FBI illegally seized communications from AOL without a warrant in violation of 18 U.S.C. § 2703. Because this argument was not mentioned in the district court's orders, it is not clear whether the issue was preserved for appeal. Even if it was, however, the record is plain that the communications captured, both the instant messaging sessions and e-mails, were sent by Fuller to the undercover FBI account and were not obtained through disclosure forced upon AOL.

Fuller challenges the search and seizure of evidence found in the spare bedroom of Branyan's apartment on two different grounds. Fuller argues first that the warrant lacked particularity because Attachment G to the warrant only identified *items to be seized,* but did not authorize *the search for those items.* We cannot accept this distinction as meaningful and agree with the district court's implicit finding that the search warrant was sufficiently particularized with respect to the scope of the search to satisfy the Fourth Amendment and allow search for the computer and the files and records stored on it. Although Fuller challenged the warrant on other grounds, the district court observed in a footnote that defendant

> has not argued that the description "all personal computers/computing systems located therein" is unconstitutionally overbroad. The Court notes that the determination of the requisite particularity must be "flexible" and the description of items to be seized need only be "as specific as the circumstances and the nature of the activity under investigation permit." *United States v. Blair,* 214 F.3d 690, 697 (6th Cir.2000) (citing *United States v. Ables,* 167 F.3d 1021, 1033 (6th Cir.1999)).

Second, Fuller challenges the validity of Branyan's consent for the search of the apartment's spare bedroom. Specifically, Fuller argues that he was an overnight guest in Branyan's apartment and spent most of his time in the spare bedroom with the door closed. Consequently, Fuller claims, Branyan lacked authority to consent to a search of the spare bedroom that revealed the presence of the computer and led to the search warrant. There is support for defendant's contention that, as an overnight guest, he had an expectation of privacy that gives him standing to challenge the search. *Minnesota v. Olson,* 495 U.S. 91, 110 S.Ct. 1684, 109 L.Ed.2d 85 (1990). Nonetheless, a warrantless search does not violate the Fourth Amendment if police have "consent to search from one who possesses common authority over the premises with the absent non-consenting target of the search." *United States v. Clutter,* 914 F.2d 775, 777 (6th Cir.1990) (citing *United States v. Matlock,* 415 U.S. 164, 169, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974)). The record supports the district court's finding that Branyan, as the lessee, had authority to consent to the search of the spare bedroom.[4]

## B. Attempted Enticement of A Minor

Count 1 of the indictment charged that between July 12 and July 20, 2000, James Stanley Fuller,

> using facilities and means of interstate and foreign commerce, that is, computerized access to the Internet and telephones, did knowingly attempt to persuade, induce, entice, and coerce an individual who had not attained the age of 18 years, that is, a thirteen (13) year old girl, to engage in sexual activity, as defined in Title 18, Section 2246, United States Code, for which

---

4. The district court observed that "the lessee's consent to the instant search of the spare bedroom provides an independent reason to deny the Defendant's motion to suppress. *See United States v. Hall,* 979 F.2d 77, 79 (6th Cir.1992); *United States v. Clutter,* 914 F.2d 775, 777 (6th Cir.1990), *cert. denied,* 499 U.S. 947, 111 S.Ct. 1413, 113 L.Ed.2d 466 (1991) (citing *United States v. Matlock,* 415 U.S. 164, 169, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974))."

Moreover, even if the government could not show Branyan's consent was valid, a warrantless entry does not violate the Fourth Amendment when it is based on consent from a third party whom the agents reasonably believed (even if erroneously) to have common authority over the premises. *United States v. Hall,* 979 F.2d 77, 79 (6th Cir.1992) (quoting *Illinois v. Rodriguez,* 497 U.S. 177, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990)).

JAMES STANLEY FULLER, a.k.a. JAMES STANLEY, a.k.a. STAN FULLER, a.k.a. BLUEEY0123, a.k.a. K9TEACHER01, can be charged with a criminal offense under Title 18, Section 2243, United States Code, under Ohio Revised Code Sections 2907.04(A), 2907.06(A)(4), and 2907.07(C), and under Code of Georgia Sections 16–6–2, 16–6–3, and 16–6–4; all in violation of Title 18, United States Code, Section 2422(b).

Fuller argues that the government offered no proof that the victim was in fact a minor, that any sexual activity occurred, or that there was the necessary nexus to interstate or foreign commerce.[5]

■ First, Fuller asserts that both the minor age of the victim and a sexual act are elements of the charged offense. This claim is meritless. This statute, as amended in 1998 to add "or attempts to do so," criminalizes both the enticement and the attempted enticement, but not the actual performance of the sexual activity. *United States v. Bailey*, 228 F.3d 637, 639 (6th Cir.2000) (intent to commit the sexual act is not required to prove attempt to persuade a minor to engage in sexual activity), *cert. denied*, 532 U.S. 1009, 121 S.Ct. 1737, 149 L.Ed.2d 661 (2001).

Further, as the district court found in denying Fuller's motion to dismiss count 1, a defendant may be charged with knowingly attempting to persuade, induce, entice, or coerce a minor to engage in sexual activity even though he is mistaken as to the true age of the person with whom he admittedly communicated. Several courts have specifically held that a defendant may be convicted of attempted persuasion or enticement of a minor even though the defendant had been communicating with an adult FBI agent posing as a minor. *See, e.g., United States v. Root*, 296 F.3d 1222 (11th Cir.2002), *cert. denied*, 537 U.S. 1176, 123 S.Ct. 1006, 154 L.Ed.2d 921 (2003); *United States v. Farner*, 251 F.3d 510 (5th Cir.2001); *United States v. Miller*, 102 F.Supp.2d 946, 948 (N.D.Ill.2000).[6]

Finally, defendant seems to argue that the government failed to prove the interstate commerce element of the offense because telephone calls to internet service providers (ISP) made within the caller's local calling area are "local calls" for reciprocal compensation arrangements under the Telecommunications Act of 1996. *See Bell Atl. Tel. Cos. v. FCC*, 206 F.3d 1 (D.C.Cir.2000) (vacating FCC ruling that such calls were not local because they extend beyond the ISP to out-of-state web sites). The "local call" designation for compensation purposes does not control this issue.

The statute requires that the defendant have used "the mail or any facility or

---

5. Fuller also argues that the indictment was jurisdictionally deficient because it refers to offenses for which he *can be* charged. On the contrary, the indictment clearly charges Fuller, in language that parallels the statute, with attempted enticement of a minor to engage in sexual activity for which he could be charged under state law. *See* 18 U.S.C. § 2422(b).

6. Although not fully developed, Fuller also seems to be arguing that there was insufficient evidence to support a finding that he believed he was communicating with a minor. Fuller specifically refers to evidence that, during their final telephone conversation on July 20, Liberti indicated she was "almost 14," "14 going on 18," "going on 21," and then assented when Fuller responded: "That's what I want to hear ... you're 21 as far as I'm concerned." While neither party discusses whether Fuller preserved such a challenge by moving for judgment of acquittal at the close of the proofs, we need only examine the transcripts of the IM sessions and telephone calls to be more than satisfied that there was sufficient evidence from which a rational trier of fact could find Fuller believed he was communicating with a minor.

means of interstate or foreign commerce" to commit the offense of attempted persuasion or enticement. 18 U.S.C. § 2422(b). While there was evidence that all communications initiated by customers using AOL were routed through one of three facilities located in Virginia before being delivered to the recipient, the interstate commerce connection was established in this case by indisputable evidence that Fuller used both the Internet and the telephone, facilities or means of interstate commerce, in committing the offense.[7]

### C. Counts 2, 3, and 4

Seeking reversal of his convictions on counts 2, 3, and 4, Fuller argues—both through counsel and in his *pro se* pleadings—that these convictions were invalidated by *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 122 S.Ct. 1389, 152 L.Ed.2d 403 (2002), because the government failed to prove that the visual depictions were of "real" children as opposed to virtual, computer-generated images that "appeared to be" children.

Decided several months after Fuller was sentenced, the Court in *Free Speech Coalition* struck down, as overbroad and unconstitutional, two provisions added by the Child Pornography Prevention Act of 1996 (CPPA). Those two provisions expanded the definition of child pornography to include: any visual depiction, including (1) a computer generated image, that "is, *or appears to be,* of a minor engaging in sexually explicit conduct," 18 U.S.C. § 2256(8)(B) (emphasis added); and (2) any sexually explicit image that was "advertised, promoted, presented, described, or distributed in such a manner that *conveys the impression*" of depicting "a minor engaging in sexually explicit conduct," 18 U.S.C. § 2256(8)(D) (emphasis added). The Court held that by encompassing "virtual" child pornography that involved no real children these definitions violated the First Amendment because they proscribed "a significant universe of speech that is neither obscene under *Miller* nor child pornography under *Ferber." Free Speech Coalition,* 535 U.S. at 1396, 122 S.Ct. 1751 (referencing *Miller v. California,* 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973), and *New York v. Ferber,* 458 U.S. 747, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982)).

■ To the extent that Fuller's claim can be understood to argue that his convictions could have been based on an unconstitutional definition of child pornography, we find no danger of this was presented here because Fuller's convictions were for violations of 18 U.S.C. § 2252(a)(1) and (a)(4)(B). These sections each require proof both that "the producing of such visual depiction involves the use of a minor engaged in sexually explicit conduct" and that "such visual depiction is of such conduct." 18 U.S.C. § 2252(a)(1)(A) and (B) and 2252(a)(4)(B)(i) and (ii). These elements correspond to the definition of child pornography that predated the CPPA amendments, now found in 18 U.S.C. § 2256(8)(A), which was not invalidated by the Court in *Free Speech Coalition. Free Speech Coalition,* 535 U.S. at 1397, 122 S.Ct. 1751; *see also United States v. Kelly,* 314 F.3d 908, 911–13 (7th Cir.), *cert. denied,* — U.S. ——, 123 S.Ct. 1923, 155 L.Ed.2d 829 (2003). As a result, we find Fuller's convictions on counts 2, 3, and 4 were not rendered unconstitutional by *Free Speech Coalition. Accord United States v. Deaton,* 328 F.3d 454, 455 (8th Cir.2003) (upholding conviction under § 2252(a)(4)(B)).[8]

---

**7.** Fuller also asserts that because counts 1 and 3 refer to interstate *and* foreign commerce, the government was required to prove both. We find no error in this regard.

**8.** To the extent that defendant may rely on

Next, without identifying this claim as a challenge to the sufficiency of the evidence. defendant nonetheless argues that the government's proofs were insufficient to support a finding that the visual depictions were produced using "actual" minors. In reviewing the sufficiency of the evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).[9]

■ In particular, defendant argues that although Dr. Rogers testified concerning the developmental stages of the depicted minors, he conceded that he was not an expert in computers and could not determine whether the images were computerized or were of real minors. When asked if he could tell whether the pictures on defendant's computer were of actual people, Grummow testified that some of the pictures were of the defendant and other known persons and that the visual depictions of child pornography "appeared to be" live human beings. Finally, defendant

relies on the statement by Rehman, the expert in computer forensics and child exploitation, that: "All of the images appear to have real children in them." When read in context, however, and in the absence of any evidence that the images were computer-generated or "virtual" child pornography, it is clear that there was sufficient evidence that actual minors were involved in the production of the images.

Significantly, no contrary evidence was offered to suggest either that any of the visual depictions were computer generated, or that they were not produced using actual minors. Having not only heard the above testimony, but also having viewed the images in question, the jury was in a position to draw its own conclusions about whether they depicted actual children. *Deaton,* 328 F.3d at 455 (jury's conclusion that real children were depicted may be upheld even when the only evidence offered was the images themselves); *see also United States v. Vig,* 167 F.3d 443, 449–50 (8th Cir.1999) (where defendant simply argues that images may or may not be of real children, the government is not required to negate as part of its proofs the unsupported speculation).[10]

recent cases applying *Free Speech Coalition* to child pornography convictions under a related statute, 18 U.S.C. § 2252A, those cases must be distinguished because § 2252A incorporates the statutory definition of child pornography, including those provisions struck down by the Supreme Court, and the jury was instructed accordingly. *United States v. Ellyson,* 326 F.3d 522 (4th Cir.2003) (reversing conviction under § 2252A(a)(5)(B) where issue was preserved). On plain error review, however, some courts have found the error did not affect the defendant's substantial rights because there was no evidence that the depictions were anything other than of "actual" minors. *See, e.g., Kelly,* 314 F.3d at 911 (affirming conviction under § 2252A(a)(5)(B) because defendant possessed "real" child pornography); *United States v. Hall,* 312 F.3d 1250, 1259 n. 11 (11th Cir.2002), *cert. denied,* —— U.S. ——, 123 S.Ct. 1646, 155

L.Ed.2d 502 (2003) (affirming because erroneous instructions did not affect defendant's substantial rights where no one claimed that the images were of virtual children).

9. Because the government does not argue that our review is for plain error, we assume such a challenge to the sufficiency of the evidence was preserved by motion for judgment of acquittal at the close of the evidence. Neither party, however, has indicated whether that was in fact the case.

10. Fuller's *pro se* pleadings also assert that the government failed to meet its burden of proving that he was personally involved in the production of the images. As the district court observed in denying one of defendant's motions to dismiss, Fuller was not charged with manufacture or production of child por-

### D. Sentencing

Fuller, having decided to represent himself at sentencing, filed numerous objections to the probation department's calculation of the guideline range. Each of the objections was specifically identified and responded to in a written addendum to the presentence report. Due to certain objections and some new information, the probation department reduced both the total offense level (from 36 to 34) and the criminal history category (from III to II). As an initial matter at the time of sentencing, the district judge took up and rejected the recommended 2–level enhancement for obstruction of justice. Then, after making clear that he had carefully reviewed every one of the defendant's objections, the court indicated that no further argument was necessary with respect to the objections already made, overruled those objections without specific discussion, and accepted the probation department's calculation of the offense levels under United States Sentencing Guidelines Manual (USSG) §§ 2G2.1 and 2G2.2 (1998).[11]

Without challenging the guideline calculations themselves, defendant argues that the district court erred by applying enhancements for specific offense characteristics without making factual findings required by Fed.R.Crim.P. 32(c)(1). Despite the government's reliance on the context of the proceedings and the colloquy with the court at sentencing, the record is clear that the district court overruled defendant's objections to the enhancements without articulating the reasons for doing so. As we explain more fully below, we only affirm because we conclude that the denials asserted in the form of objections to the sentencing enhancements did not present a controverted or disputed matter for which findings were required. Even so, we cannot help but observe that this issue could easily have been avoided if the district court had just addressed each of the enhancements in turn and stated the basis for finding that it should be applied in this case.

At the time of sentencing, Rule 32(c)(1) (2001) stated that: "For each matter controverted, the court must make either a finding on the allegation or a determination that no finding is necessary because the controverted matter will not be taken into account in, or will not affect, sentencing."[12] "Because the purpose of the rule is to ensure that sentencing is based on reliable facts found by the court itself after deliberation, a court may not merely summarily adopt the factual findings in the presentence report or simply declare that the facts are supported by a preponderance of the evidence." *United States v. Tarwater*, 308 F.3d 494, 518 (6th Cir.2002) (citing *United States v. Corrado*, 227 F.3d 528, 540 (6th Cir.2000)). This court has required "literal compliance" with this rule. *United States v. Tackett*, 113 F.3d 603, 613 (6th Cir.1997).

---

nography, proscribed by 18 U.S.C. § 2251, but rather with transportation and possession of child pornography in interstate or foreign commerce in violation of 18 U.S.C. § 2252, which does not require that the named defendant be involved in any way in the production of the visual depiction. *See United States v. Tidwell*, No. 89–5880, 1990 WL 170432, *2 (6th Cir. Nov.6, 1990) (unpublished disposition) (discussing differences between §§ 2251 and 2252 for double jeopardy purposes).

11. The 1998 edition of the United States Sentencing Guidelines Manual was applied in this case due to concerns about possible *ex post facto* problems that might arise from subsequent amendments to the relevant guideline provisions.

12. This provision was replaced, effective December 1, 2002, with Fed.R.Crim.P. 32(i)(3) (2003), which clarifies that the sentencing court "may accept any undisputed portion of the presentence report as a finding of fact."

The requirement of literal compliance, however, assumes that the objections raise a matter which is *controverted.* For example, in *United States v. Treadway,* 328 F.3d 878, 885–86 (6th Cir.2003), *petition for cert. filed,* No. 02–11197, —— U.S.L.W. —— (U.S. June 9, 2003), where the defendant had not objected, orally or in writing, to the drug quantity calculation, this court found "no reason to require a district court to make independent findings outside the PSR when the facts are undisputed." *Id.* at 886. Even an objection that represents a bare denial or "bare bones" assertion of a factual dispute will not give rise to a dispute within the meaning of Rule 32 unless the defendant produces some evidence that calls the reliability or correctness of the alleged facts into question. *United States v. Lang,* 333 F.3d 678, 681 (6th Cir.2003) (agreeing with *United States v. Mustread,* 42 F.3d 1097, 1102 (7th Cir. 1994)).

Defendant claims error in the district court's overruling of his objections to the enhancements imposed for the following specific offense characteristics: (1) "the material involved a prepubescent minor or a minor under the age of twelve years" (2 levels); (2) "the offense involved distribution" (5 levels); (3) "the offense involved material that portrays sadistic or masochistic conduct or other depictions of violence" (4 levels); and (4) "a computer was used for the transmission of the material" (2 levels). USSG § 2G2.2(b)(1), (2), (3), and (5) (1998). The critical question is whether the objections placed any of these matters in controversy for purposes of Rule 32.

### 1. Prepubescent Minor

■ Fuller's objection to the first enhancement was that the government had failed to prove at trial that he had sent or received any visual depiction involving a prepubescent minor or a minor under the age of twelve years. As outlined above, however, Fuller offered no evidence at trial to dispute the testimony of Dr. Rogers that 21 images were of minors and that 13 of those images were of minors at a developmental stage for which the average age was 10 years. The only challenge to that testimony was the speculation, raised by cross-examination, that the images were not of "real" children. The fact that "real" children had been used was established by defendant's convictions on counts 2, 3, and 4. Thus, defendant's denial in this regard did not create a dispute as to any fact and the applicability of this specific offense characteristic cannot be said to have been reasonably controverted.

### 2. Use of Computer

Similarly, Fuller objected to the fourth enhancement on the grounds that the government offered no evidence that he used a computer to send or receive material that involved a minor engaging in sexually explicit conduct for the purpose of producing a visual depiction of such conduct. This objection mirrors the arguments defendant made in challenging the sufficiency of the evidence to support his convictions on counts 2, 3, and 4, but does not deny that "a computer was used for the transmission of the material" as is required for the enhancement under § 2G2.2(b)(5).

■ Because defendant's conviction on count 3 required proof that he transmitted child pornography by computer, application of this enhancement for that offense cannot be contested. In addition, this court has recently adopted the Seventh Circuit's interpretation of this enhancement as applying equally to material that is either shipped by the defendant or received by the defendant as long as a computer was used for the transmission of the

material. *United States v. Boyd,* 312 F.3d 213, 216 (6th Cir.2002) (following *United States v. Richardson,* 238 F.3d 837, 839 (7th Cir.2001)). The evidence at trial showed that child pornography was not only sent to Liberti, but was downloaded to defendant's computer from the Internet. Not only was this enhancement required by the convictions on counts 3 and 4, but defendant did not directly dispute the factual basis at sentencing.

### 3. Distribution

Fuller objected to the enhancement under § 2G2.2(b)(2), which applied if the offense involved distribution. The application notes define "distribution" to *include* "any act related to distribution for pecuniary gain, including, production, transportation, and possession with intent to distribute." USSG § 2G2.2, comment. (n.1) (1998). Denying that he gave any visual depiction to anyone, defendant also objected on the grounds that there was no evidence of distribution for any pecuniary gain.

■ Although courts have differed on the issue, this court has followed the Fifth Circuit's lead and held that this enhancement encompasses distribution for pecuniary gain, but does not exclude distribution for any other purpose. *United States v. Hibbler,* 159 F.3d 233, 237–38 (6th Cir. 1998) (trading child pornography over the Internet was distribution for "value") (following *United States v. Canada,* 110 F.3d 260, 263 (5th Cir.1997)). *But see United States v. Laney,* 189 F.3d 954 (9th Cir. 1999) (pecuniary gain required). In fact, the Fifth Circuit in *Canada* found that the defendant's distribution of material involving the sexual exploitation of minors with a purpose of enticing another to have sex with him was sufficient to trigger the enhancement. 110 F.3d at 263. In this case, nothing in the record contradicted the evidence that Fuller transmitted child pornography as part of his attempt to entice a minor into sexual activity. Nor did defendant's objections create a disputed question on the issue.[13]

### 4. Sadistic or Masochistic Conduct

Finally, objecting to the 4–level enhancement under § 2G2.2(b)(3), Fuller stated generally that the government had not charged or proved an offense that involved depictions being sent or received by computer that portrayed "sadistic or masochistic conduct or other depictions of violence." This general denial does not create a factual dispute concerning the depictions, all of which were admitted into evidence and viewed by the district court, or present a controverted matter concerning the application of this enhancement.

Although the guidelines themselves do not define what is meant by sadistic, masochistic, or violent depictions, courts must look to the common meaning of these terms to determine their application. *See, e.g., United States v. Parker,* 267 F.3d 839, 847 (8th Cir.2001), *cert. denied,* 535 U.S. 1011, 122 S.Ct. 1592, 152 L.Ed.2d 509 (2002); *United States v. Lyckman,* 235 F.3d 234, 237–40 (5th Cir.2000). The term "sadism," which is the most relevant to this case, is defined as the "infliction of pain upon a love object as a means of obtaining sexual release." *Lyckman,* 235 F.3d at 238 n. 19 (citation omitted). Con-

---

**13.** This guideline provision was substantially amended effective November 1, 2000, to clarify that the enhancement applies to distribution for pecuniary gain; distribution for the receipt, or expectation of receipt, of a thing of value; distribution to a minor; distribution to a minor that was intended to persuade, induce, entice, coerce, or facilitate the travel of a minor to engage in prohibited sexual conduct; and distribution other than that specifically enumerated. USSG § 2G2.2(b)(2)(A)-(E) (2000).

struing the terms "sadistic conduct" and "other depictions of violence" in the context of cases involving child pornography, courts have found the enhancement is warranted when the offense involves the depiction of a sexual act that is "likely to cause pain in one so young." *Lyckman*, 235 F.3d at 238–39.

A number of courts have found that images displaying vaginal or anal penetration of a prepubescent minor by either an adult male or a foreign object is likely to be painful and constitutes "sadistic conduct" that justifies the enhancement. *See, e.g., Hall*, 312 F.3d at 1261–63; *Parker*, 267 F.3d at 847; *Lyckman*, 235 F.3d at 238–39; *Canada*, 110 F.3d at 264; *United States v. Caldwell*, No. 97–5618, 1999 WL 238655, *9 (6th Cir. Apr.13, 1999) (unpublished disposition). One circuit has specifically held that the government need not present expert medical evidence to prove such acts would be painful to a young child. *Hall*, 312 F.3d at 1262.

■ As the government aptly observes on appeal, the pictures found on defendant's computer included images of sexual penetration of prepubescent girls that present sufficient basis to find the material portrayed images of "sadistic conduct" justifying the 4–level enhancement.[14] Defendant's general objection did not dispute that pictures found on his computer included images that portrayed sexual penetration of prepubescent girls that would likely be painful. Nor did defendant present a legal controversy about the definition of sadistic conduct for purposes of the enhancement. As a result, the district court's failure to specify the reasons for applying the enhancement was not error.[15]

AFFIRMED.

**14.** Government Exhibit 133 included two pictures entitled "Creempuff4u ... bottle.bmp" and "Creempuff4u ... fucking bottle.bmp." Also, Government's Exhibits 110, 113, 117, and 122 were entitled "!!!!!!!preteen gets it in the ass.bmp," "12 year old getting fucked.bmp," "familyfun.jpg," and "preteen.21.bmp."

**15.** As a result, we express no opinion with respect to the government's further contention on appeal that the enhancement under § 2G2.2(b)(3) may be based on images of bondage or bestiality that were not identified as child pornography. (Government Exhibits 128 to 132 were entitled: "strapped to chair-pussy.bmp," "bondage.jpg," "slave.1.bmp," and "slave.2.bmp.") We note, however, that the decision relied on by the government to support this proposition rested on the interplay of the sentencing guidelines and a determination of relevant conduct where the convictions involved a common scheme to distribute both obscene material that depicted adults involved in sadomasochistic conduct and sexually explicit child pornography that did not involve either violence or sadism. *United States v. Schultz*, 970 F.2d 960 (1st Cir.1992).