NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0471n.06

No. 11-1429

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

RUBEN STEVEN RANKE,

      Defendant-Appellant.

_____ /

FILED

May 03, 2012

LEONARD GREEN, Clerk

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF MICHIGAN

BEFORE:    SUHRHEINRICH, MOORE, and CLAY, Circuit Judges.

**CLAY, Circuit Judge.**   Defendant Ruben Steven Ranke pleaded guilty to one count of mailing child pornography, in violation of 18 U.S.C. § 2252A(a)(1), following an order by the district court that denied Defendant's motion to suppress evidence discovered in his residence pursuant to a search warrant. The district court reasoned that the search warrant was supported by probable cause and that the good faith exception otherwise applied. For the reasons that follow, we **AFFIRM**.

## BACKGROUND

In March of 2008, authorities at the Federal Correctional Institution in Ray Brook, New York (FCI Ray Brook) intercepted the incoming mail of an inmate named Adam Brown, who was serving time for violations of federal child pornography law. Among Brown's incoming mail was an Easter greeting card mailed from Flint, Michigan. Inside the card, authorities discovered four photographs

of a naked male minor depicted masturbating with his genitals exposed. Prison officials then searched Brown's cell and seized several items, including multiple handwritten letters and Brown's personal address book.

The only entry in Brown's address book matching Michigan was a listing for one "Steve Ranke" at "5065 State, #273, Saginaw, MI." Brown also had in his possession two handwritten letters signed by a "Steve." The letters described, in crude code, the author's desire to engage in sexual activity with young boys. "Steve" used a musical band as a metaphor to describe his fantasies, describing sex as "a jam session," other child molesters as "band members," and "playing the flute" and "playing the drums" to describe oral and anal sex with minor boys.

"Steve" also suggested that he possessed, viewed, and transmitted child pornography. In one letter he described in detail a ".jpg" of a "musician" who "wore a black ski mask" during a "jam session" with "a nice set of bongo drums." In the same letter, "Steve" noted that he was "sending some pics with this letter." In another, "Steve" mentioned "sending some .jpgs with this letter" and signed the correspondence, "Enjoy."

"Steve" also alluded to acts that went beyond mere fantasy, describing how he introduced a ten-year-old boy to anal sex and how he hoped to adopt a "needy kid[] needing a family." "Steve" also wrote about the rewards and challenges involved with his employment working with developmentally delayed elementary school students. He described fantasizing about several ninth grade students in another of his classrooms.

2

Prison authorities confronted Brown about the greeting card and the photographs recovered from his incoming mail, as well as the letters seized from his cell. Brown told prison officials that if they "did their due diligence on Ranke in Saginaw, they were on the right track."

Acting on Brown's tip and the evidence recovered from his cell, officers tracked the address listed in Brown's book to a UPS store located in Saginaw, Michigan. Box number 273 was rented to Defendant. Using various law enforcement databases, officers confirmed that Defendant used the mailbox as his mailing address, and they tracked Defendant a second mailbox at the same UPS store. Officers also connected Defendant to residential address located at 4049 Ann Street in Saginaw. Officers confiscated trash left outside the Ann Street residence and found small amounts of marijuana and several pieces of mail addressed to various individuals, none of whom were Defendant.

On April 29, 2008, a state district judge signed a search warrant for the two UPS mailboxes and the Ann Street residence. After executing the warrants on the mailboxes, officers learned that Defendant also rented two storage units and obtained additional search warrants for the units.

When officers went to execute the search warrant on the Ann Street address that same day, they learned that the house was the residence of Defendant's sister, Shelly Fulton. Fulton told officers that Defendant sometimes used the house as a mailing address, but that he never lived there. Fulton explained that Defendant lived with his parents at 1749 Wood Street, also in Saginaw. In addition, Fulton informed the officers that Defendant worked with autistic children at an area public school. Through public records, officers confirmed that the 1749 Wood Street address was owned

and occupied by Defendant's father. Based on this information, officers applied for and obtained an additional search warrant for the 1749 Wood Street residence.

On April 30, 2008, officers executed the search warrant at 1749 Wood Street. Family members provided officers with a key to Defendant's locked, second-story bedroom. There, officers seized several video recording and movie-making devices, a laptop computer with four external hard drives, VHS tapes, DVDs, and floppy disks. Officers also seized numerous firearms, several marijuana plants, and drug paraphernalia. A subsequent forensic examination of the digital media seized from Defendant's room revealed a large amount of child pornography.

Subsequently, Defendant pleaded guilty in state court to possession of a firearm while in commission of a felony, in violation of Mich. Comp. Laws § 750.227b. He was sentenced to two years incarceration in state prison on December 2, 2009. While Defendant was in the custody of the State of Michigan awaiting trial on the firearms charge, a federal grand jury for the Eastern District of Michigan returned a two-count indictment charging Defendant with one count of mailing child pornography, in violation of 18 U.S.C. § 2252A(a)(1), and one count of possessing child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B). After Defendant completed his state sentence, he was immediately taken into federal custody for trial on the federal child pornography charges.

On August 3, 2010, Defendant moved to suppress all evidence and derivative evidence discovered from the searches of the UPS mailboxes, the storage units, 4049 Ann Street, and 1749 Wood Street. The government stipulated that the only items it intended to use were those recovered

from the search of 1749 Wood Street. Accordingly, the district court dismissed without prejudice Defendant's suppression motions related to the other locations.

On October 29, 2010, the district court entered a lengthy order denying Defendant's motion to suppress the evidence seized from 1749 Wood Street. Following the unfavorable ruling, Defendant pleaded guilty to one count of mailing child pornography. Pursuant to a plea agreement, the possession of child pornography charge was dismissed, and Defendant preserved his right to appeal the district court's suppression decision. Shortly thereafter, Defendant lodged this timely appeal. Original jurisdiction exists under 18 U.S.C. § 3231; this Court takes jurisdiction under 28 U.S.C. § 1291.

**ANALYSIS**

On appeal, Defendant challenges the district court's denial of his motion to suppress. Defendant contends that the motion should have been granted because the evidence seized from 1749 Wood Street was obtained pursuant to a search warrant affidavit that did not establish probable cause.

This Court applies a mixed standard of review in evaluating a district court's ruling on a motion to suppress. *United States v. Howard*, 621 F.3d 433, 450 (6th Cir. 2010). We review a district court's findings of fact for clear error and any of its related conclusions of law *de novo*. *Id*.

The Fourth Amendment provides the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . " and demands that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation." U.S. Const. amend. IV. "In deciding whether to issue a search warrant, the Fourth Amendment requires 'the

issuing magistrate . . . simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Terry*, 522 F.3d 645, 648 (6th Cir. 2008) (quoting *Illinois v. Gates*, 462 U.S. 213 238 (1983)). Probable cause "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Gates*, 462 U.S. at 243 n.13. Additionally, there must be "a nexus between the place to be searched and the evidence sought." *United States v. Gardiner*, 463 F.3d 445, 470 (6th Cir. 2006) (internal citations omitted).

"When judging the sufficiency of an affidavit to establish probable cause in support of a search warrant, the Supreme Court has repeatedly said that after-the-fact scrutiny should not take the form of a *de novo* review. Rather, reviewing courts are to accord the magistrate's determination 'great deference.'" *United States v. Lapsins*, 570 F.3d 758, 763 (6th Cir. 2009) (quoting *Gates*, 462 U.S. at 236) (additional internal citations and quotations omitted). "When an affidavit is the basis for a probable cause determination, the affidavit 'must provide the magistrate with a substantial basis for determining the existence of probable cause.'" *United States v. Thomas*, 605 F.3d 300, 307 (6th Cir. 2010) (quoting *Gates*, 462 U.S. at 239). "Search warrant affidavits are to be judged on the totality of the circumstances, not line-by-line scrutiny." *Id*. (internal citations omitted).

Detective Brian Pitt submitted a four-page affidavit to establish probable cause to search 1749 Wood Street. The affidavit described the circumstances in which the Easter card and the four images were seized by prison officials from Brown's incoming mail. Significant to Defendant's appeal, the affidavit described the images found in the card as "'computer generated photographs'

of a minor male" that "displayed that male naked, exposing his genital areas and apparently masturbating."

The affidavit also described the address book, with its entry for "Steve Ranke," the two letters authored by "Steve" that were discovered in Brown's cell, and Brown's statement to prison authorities that if they investigated "Ranke in Saginaw" they would be "on the right track." The two letters were attached to the affidavit; however, the photographs were not.

Finally, Detective Pitt detailed the authorities' follow-up investigations linking Defendant first to the UPS mailboxes and to the address on Ann Street and then, by virtue of the statements made by Defendant's sister and further public records searches, to the address on Wood Street.

In contending that these facts did not establish probable cause, Defendant highlights several specific alleged deficiencies with the affidavit. In Defendant's primary argument, he seizes upon the affidavit's description of the images as "computer generated photographs." Defendant points to *Ashcroft v. Free Speech Coalition*, 535 U.S. 234 (2002), the Supreme Court case which held certain portions of the Child Pornography Prevention Act of 1996 (CPPA) overbroad and unconstitutional. Under *Free Speech Coalition*, so-called "virtual" child pornography which does not involve real children, but instead uses so-called "computer generated images" (CGI images) to depict minors engaged in sexually explicit acts, is speech protected under the First Amendment. *See United States v. Fuller*, 77 F. App'x 371, 379 (6th Cir. 2003). Defendant contends that the images, as described in the affidavit as "computer generated," would not have been illegal; therefore, they could not have provided probable cause to support a search warrant.

7

Defendant's argument is without merit. Although the affidavit's mention of the term "computer generated" is somewhat problematic given commonly-used computer terminology and the legal distinction drawn by *Free Speech Coalition*, Defendant ignores the fact that the phrase "computer generated" was also immediately coupled with the description of the images as "photographs." Calling the images "photographs" suggested that the images were, in fact, those of a real child and not CGI depictions. At best, the affidavit's phrasing was internally contradictory. Although this minor, technical contradiction might have warranted further inquiry by the state judge, it does not merit suppression of the seized evidence on appellate review. Furthermore, we note that Defendant now admits that the images were, in fact, photographs of a real minor child.

Next, Defendant argues that the affidavit was insufficiently detailed. He points out that the affidavit does not indicate how Detective Pitts determined that the images were of a minor and that Detective Pitts' description of a boy "apparently masturbating" suggests that he never actually viewed the images personally. Defendant claims these deficiencies were compounded when Detective Pitts failed to attach the images to the affidavit for the state court judge's independent review.

The implication, to the extent one exists, that Detective Pitts never viewed the images personally, as well as his failure to attach the photographs to the search warrant affidavit, are both factors that should have played into the state court judge's probable cause analysis. However, neither precluded the judge from issuing the search warrant. First, an officer is entitled to rely on information supplied by other officers or agencies for the purposes of a search warrant affidavit, provided that the information and its sources are accurately described for the reviewing judge's

independent evaluation. *See United States v. Yusuf*, 461 F.3d 374, 385 (3d Cir. 2006); *United States v. Jenkins*, 525 F.2d 819, 823 (6th Cir. 1975) (per curiam). Detective Pitts fulfilled that requirement when he provided an accurate description of the circumstances under which he "received information from federal authorities" regarding the greeting card, the accompanying photographs, and the incriminating evidence discovered in Brown's cell. Likewise, Detective Pitts' failure to attach the photographs themselves did not prevent the search warrant from being issued. A magistrate judge need not view all the evidence personally to make its decision, and the probable cause stage only requires an affidavit to show the "'probability or substantial chance of' possession of images of actual children; 'an actual showing' that the images depicted real children" is not required. *Lapsins*, 570 F.3d at 765 (citing *Gates*, 462 U.S. at 243 n.13).

Finally, Defendant argues that because the government agreed not to use any of the evidence that was retrieved from the other searches, whatever corroborating evidence was discovered between the confiscation of Brown's prison mail and the search of 1749 Wood Street should not have factored into the district court's suppression analysis. He also points out that the letters were undated, that they primarily described child molestation, and that the affidavit did not connect the "Steve" in the letters to the "Steve Ranke" in Brown's address book.

Defendant's arguments completely ignore, however, that the physical pictures seized from Brown's mail were not the only evidence that suggested Brown was being sent child pornography by a "Steve" at "5065 State, #273, in Saginaw, Michigan." Even if we set aside the incriminating evidence discovered in the other locations, as Defendant suggests, the evidence found in Brown's

cell, coupled with Brown's tip and the statements made by Defendant's sister provided probable cause to support the search warrant.[1]

In the letters seized from Brown's cell, which were attached to the affidavit for the state court judge's review, "Steve" mentioned that he possessed and viewed child pornography, describing one ".jpg" in some detail. "Steve" also stated that he had sent Brown "pics" and ".jpgs" on prior occasions. Contrary to Defendant's assertions, the letters therefore went far beyond descriptions of sexual fantasies or of child molestation, and the letters provided probable cause to believe their author was also a consumer of child pornography. *Cf. United States v. Hodson*, 543 F.3d 286, 293 (6th Cir. 2008). Moreover, that the letters were undated and that the affidavit did not mention whether multiple "Steves" were listed in Brown's address book were facts only to be considered in their totality with the other circumstances, such as that Brown was a federal inmate serving time for child pornography, who had limited mail access, and whose address book listed only one address from the State of Michigan.

Moreover, Brown's non-confidential statement to authorities provided additional cause to believe that the "Steve Ranke" listed in Brown's address book would have child pornography in his possession. *See United States v. Dyer*, 580 F.3d 386, 391 (6th Cir. 2009) (citing *United States v. May*, 399 F.3d 817, 824–25 (6th Cir. 2005)). Although Brown's actual statement may have been vague, the letters and the address book were not. The contents of those detailed, written sources were

---

[1]Defendant acknowledges that he cannot challenge the search of 4049 Ann Street or the officers' conversations with his sister that resulted therefrom, as he had no protected privacy interest in that residence.

fully corroborated when officers linked the name and address listed in Brown's book to an individual who went by the name "Steve Ranke" and who worked with developmentally disabled children.

In the instant case, Detective Pitts' affidavit provided ample, specific facts to support the state court judge's determination that there was a fair probability that child pornography would be found in Defendant's home. Accordingly, the district court correctly denied Defendant's motion to suppress. Because the warrant was supported by probable cause, we need not rely on the good faith exception to excuse any of the affidavit's non-material deficiencies.[2] *See United States v. Leon*, 468 U.S. 897, 923 (1984); *United States v. Chapman*, 112 F. App'x 469, 474 (6th Cir. 2004) (citing *United States v. Savoca*, 761 F.2d 292, 296–98 (6th Cir. 1985)).

## CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's order denying the motion to suppress.

---

[2]Furthermore, Defendant has provided no evidence to suggest that Detective Pitts acted recklessly or deliberately to mislead the state court judge. *See Leon*, 468 U.S. at 923.