RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 04a0362p.06

# UNITED STATES COURTS OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee/*
*Cross-Appellant,*

Nos. 03-5825/5928

*v.*

JOHN PATRICK FARRELLY,

*Defendant-Appellant/*
*Cross-Appellee.*

Appeal from the United States District Court
for the Western District of Kentucky at Louisville.
No. 02-00099—Edward H. Johnstone, District Judge.

Argued: August 11, 2004

Decided and Filed: October 25, 2004

Before: KEITH, MARTIN, and ROGERS, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Frank P. Campisano, LAW OFFICE OF FRANK CAMPISANO, Louisville, Kentucky, for Appellant. Monica Wheatley, ASSISTANT UNITED STATES ATTORNEY, Louisville, Kentucky, for Appellee. **ON BRIEF:** Frank P. Campisano, LAW OFFICE OF FRANK CAMPISANO, Louisville, Kentucky, for Appellant. Candace G. Hill, Terry M. Cushing, ASSISTANT UNITED STATES ATTORNEYS, Louisville, Kentucky, for Appellee.

_____

## OPINION

_____

ROGERS, Circuit Judge. John Patrick Farrelly was convicted of one count of receiving child pornography and was sentenced to 57 months' imprisonment. Because there was sufficient evidence that the pornographic images that Farrelly received were of real children, we AFFIRM Farrelly's conviction. However, because the district court applied the wrong sentencing guideline for conduct that did not amount to trafficking in child pornography, we REVERSE and REMAND for resentencing.

1

## I. Background

Farrelly, a former police chief, worked as the coordinator of a county 911 center in Kentucky starting in 1989.  In November 2001, the FBI received a tip from one of Farrelly's coworkers that Farrelly was accessing child pornography on his office computer.  On December 5, 2001, federal agents executed a search warrant on Farrelly's office computer. Forensic examination of that computer revealed that someone had used the computer routinely to access child pornography web sites since 1998 or 1999, including the morning of the raid.

The United States charged Farrelly with one count of "knowingly receiv[ing], by computer, child pornography, as that term is defined in 18 U.S.C. § 2256(8)(A)" in violation of 18 U.S.C. § 2252A(a)(2)(A), and one count of "knowingly possess[ing] one or more computer disks and other material which contained images of child pornography" in violation of 18 U.S.C. § 2252A(a)(5)(B).

Farrelly's case went to trial on March 19, 2003.  At the conclusion of the Government's case, Farrelly moved for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29(a), arguing, in part, that *Ashcroft v. Free Speech Coalition*, 535 U.S. 234 (2002), required the United States to prove that the images were of real children and the United States failed to do so.  The district court denied the motion. Farrelly made a similar motion after the defense rested, and it was again denied.  On March 24, 2003, the jury convicted Farrelly of count one—receipt—but acquitted him of count two—possession.  Farrelly then renewed the same argument in a motion for judgment of acquittal and alternative motion for a new trial. Again, the district court denied his motion after finding that the jury had enough evidence to conclude that the images were of real children.

Applying § 2G2.2 of the United States Sentencing Guidelines ("U.S.S.G."), the district court sentenced Farrelly to imprisonment for 57 months.  The court refused to grant Farrelly a two-level reduction based on acceptance of responsibility under U.S.S.G. § 3E1.1.  The court also declined to apply a five-level enhancement, urged by the Government, for prior sexual abuse of a minor under U.S.S.G. § 2G2.2(b)(4). The court reasoned that the enhancement was based on testimony that was not subject to cross-examination. Farrelly has appealed his conviction and sentence, and the Government has cross-appealed, arguing that the district court should have applied the five-level sentencing enhancement.

Farrelly argues (1) that under the rule of *Free Speech Coalition* there was insufficient evidence to sustain his conviction because the Government did not prove that the images were of real children, (2) that he should have been sentenced under U.S.S.G. § 2G2.4 for possession of child pornography  instead of § 2G2.2 for the receipt of child pornography, because there was no evidence that he was anything more than an end user, and (3) that he was entitled to a sentence reduction for acceptance of responsibility because he only went to trial to preserve his constitutional rights under *Free Speech Coalition*.  The Government on cross-appeal contends that the district court improperly denied the five-level enhancement under U.S.S.G. § 2G2.2(b)(4) because it mistakenly concluded that due process prevented it from considering testimony that was not subject to cross-examination.[1]

We affirm Farrelly's conviction because *Free Speech Coalition* does not require the Government to do more in the context of this case than present the images to the jury for a determination that the depictions were of actual children.  The district court also did not err by refusing to apply a reduction for acceptance of responsibility.  However, the district court should have applied U.S.S.G. § 2G2.4 instead of § 2G2.2 because there was no evidence that Farrelly was involved in trafficking of child pornography as contemplated by § 2G2.2.  Since § 2G2.4 does not have a comparable subsection to § 2G2.2(b)(4) to

---

[1]After the case was scheduled for oral argument, Farrelly filed a supplemental brief in which he requested the court to remand the case for sentencing in light of *Blakely v. Washington*, ___ U.S. ___, 124 S.Ct. 2531 (2004).  This argument is precluded by our intervening decision in *United States v. Koch*, ___ F.3d ___, 2004 WL 1899930 (6th Cir. 2004) (en banc).

enhance a sentence based on a pattern of activity involving the sexual abuse of a minor, the Government's cross-appeal fails.

## II. Conviction

The Government presented sufficient evidence for the jury to conclude that the images at issue were of actual children; thus, the district court properly denied Farrelly's motion for judgment of acquittal. Although we review the district court's denial of the motion *de novo*, we are required to affirm the district court's decision if "after viewing the evidence in the light most favorable to the prosecution, and after giving the government the benefit of all inferences that could reasonably be drawn from the testimony, any rational trier of fact could find the elements of the crime beyond a reasonable doubt." *United States v. M/G Transp. Servs., Inc.*, 173 F.3d 584, 589 (6th Cir. 1999); *see also United States v. Canan*, 48 F.3d 954, 962 (6th Cir. 1995).

Farrelly claims that the Government failed to provide sufficient evidence that the visual depictions on his computer were actual children and not virtual children. Farrelly relies primarily on *Ashcroft v. Free Speech Coalition*, 535 U.S. 234 (2002), for his argument that the Government had the burden of proving that the images were of "real" children. In *Free Speech Coalition*, the Supreme Court determined that a provision of the Child Pornography Prevention Act of 1996, which prohibited any visual depiction that "is, or appears to be, of a minor engaging in sexually explicit conduct," was unconstitutional. *Free Speech Coalition*, 535 U.S. at 258; *see* 18 U.S.C. § 2256(8)(B) (1997). The Court reasoned that § 2256(8)(B) was overbroad because it criminalized items in which children were not exploited in the production process, such as the creation of computer generated children or the use of child-like, but overage, actors. *Id.* at 250-55.

According to Farrelly, *Free Speech Coalition* requires the Government to present proof that the images were of actual and not virtual children, and since the Government did not present any of that proof, there was insufficient evidence for a guilty verdict. Farrelly contends that the only evidence of the reality of the children was the Government's expert witness, Dr. Betty Spivack, who opined that many of the images were under thirteen years old and some were likely "a good deal less." On cross-examination, Dr. Spivak stated that she did not have the experience to determine whether the images were of actual children or had been computer generated, modified, or altered.

We assume for the sake of argument that the Government has the burden of showing that the images in this case were of actual children. That is a fair inference from the reasoning of the Supreme Court in *Free Speech Coalition.*

In the instant case, the Government provided sufficient evidence that the images were of real children.   The jury had access to the photographs and the defense never challenged the reality of the children. Importantly, the jury was clearly instructed that it had to find that the images were of real children. The district judge instructed the jury that actual children had to be depicted in the images when he defined child pornography. Instruction number 3 stated that "the term child pornography means any visual depiction . . . where the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct.   The minor in the picture, film, et cetera, must be a real person, not a computer-created representation of a person."[2]

The adequacy of the evidence is supported by our well-reasoned, albeit unpublished, opinion in *United States v. Fuller*, No. 02-3303, 77 Fed. Appx. 371, 2003 WL 22331999, at **7 (6th Cir. Oct. 9, 2003). In that case this court upheld a defendant's conviction under 18 U.S.C. §§ 2252(a)(1) (shipment of child pornography) and 2252(a)(4)(B) (possession of child pornography). The court noted that the prosecution

---

[2]Because the district court removed language that could potentially conflict with *Free Speech Coalition* from the jury instructions, Farrelly cannot contend that his conviction rested on the fact that the jury could have convicted him on an unconstitutional basis.

submitted sufficient evidence even though the expert acknowledged that he was not an expert at analyzing computer generated images. *Fuller*, 77 Fed. Appx. at 380. Other evidence presented included the experts' determination that the images "appeared to be" real children or "appear[ed] to have real children in them," and the lack of any contrary evidence that the images were computer generated or produced using adults. *Id.* This court reasoned:

> Significantly, no contrary evidence was offered to suggest either that any of the visual depictions were computer generated, or that they were not produced using actual minors. Having not only heard the above testimony, but also having viewed the images in question, the jury was in a position to draw its own conclusions about whether they depicted actual children.

*Id.*[3]

Our conclusion that the evidence is sufficient in this case necessarily assumes that *Free Speech Coalition* did not impose a special or heightened evidentiary burden on the Government to prove that images are of real children. The question of whether the images are virtual or real is one of fact, to be determined by evidence about which argument can be made to the jury. Other circuits have rejected the argument that the Government must meet a higher evidentiary burden than before *Free Speech Coalition.*[4]

Applying a plain error analysis, the Tenth Circuit—in determining that there was no error in the first place—squarely rejected the argument that the Supreme Court's decision in *Free Speech Coalition* requires expert testimony to establish that images depict real rather than computer-generated children.[5] *United States v. Kimler*, 335 F.3d 1132, 1140-42 (10th Cir. 2003). The Tenth Circuit reasoned persuasively:

---

[3]In disposing of a related claim—that the convictions in *Fuller* were obtained under an unconstitutional definition of child pornography—the court distinguished cases involving convictions under 18 U.S.C. § 2252A, which contains the provisions struck down in *Free Speech Coalition*, and which was the basis for the convictions in the instant case as well. *Fuller*, 77 Fed. Appx. at 379 n.8. The subsequent analysis of *Fuller* regarding sufficiency of the evidence is nonetheless directly relevant to this case. The jury instructions in the instant case—requiring a finding that actual children were depicted—eliminated the unconstitutional element that required the *Fuller* court to distinguish § 2252A cases.

[4]In an opinion that was subsequently withdrawn, the First Circuit held that expert evidence is required to show that downloaded images of child pornography are images of real children. *United States v. Hilton*, 363 F.3d 58, 63-66 (1st Cir. 2004), *withdrawn by United States v. Hilton*, 2004 App. LEXIS 19528 (1st Cir. Sept. 20, 2004). Initially, the First Circuit reasoned that "a finding of guilt beyond a reasonable doubt demands . . . evidence that the indicators of youth apparent to the untrained eye belong to an actual child." *Id.* at 65. As explained by Judge Howard's thoughtful concurrence, however, taking issue with this very holding, the First Circuit's analysis was inconsistent not only with all the other cases, but also with the Supreme Court's rejection of the hypothesis that virtual images are indistinguishable from real ones.
> The import of [the Supreme Court's statement in *Free Speech Coalition*] is that the typical consumer of child pornography can differentiate between real and virtual depictions of child pornography. Presumably, if the average child pornography consumer can make such a determination, so can a judge or juror.
*Id.* at 67-68.
On rehearing, the court made no mention of its withdrawn opinion requiring expert evidence to prove that children portrayed in pornographic images are real. Instead, the court affirmed the grant of habeas relief because the trial court did not make a finding of fact regarding the reality of the children. *United States v. Hilton*, — F.3d —, 2004 WL 2149133, at *5 (1st Cir. Sept. 27, 2004) (per curiam). Thus, at this time, it appears that no circuit requires that expert evidence be introduced to prove the reality of children portrayed in pornographic images.

[5]While it is true that the *Kimler* court engaged in a plain error analysis, 335 F.3d at 1140-41, the court made clear that it would reach the same conclusion under a direct review of the sufficiency of the evidence. 335 F.3d at 1141 n. 10. Also, it should be noted that the identity of one of the children in *Kimler* was recognized as the defendant's daughter. *Kimler*, 355 F.3d at 1135. However, the Tenth Circuit did not refer to this fact in its legal analysis of the asserted expert-testimony requirement. 335 F.3d at 1140-42.

[Defendant] Kimler argues that *Free Speech Coalition*, at least implicitly . . . laid down . . . the absolute requirement that, absent direct evidence of identity, expert testimony is required to prove that the prohibited images are of real, not virtual, children. He cites no authority for that proposition, and there is no pronouncement in *Free Speech Coalition* to that effect.

Rather, Kimler points to Congressional Findings cited by the Court in its discussion, that technological advances have made it "possible to create realistic images of children who do not exist." *Free Speech Coalition*, 535 U.S. at 240. And, he emphasizes representations made by the government to the Court that it has become difficult to meet the burden of proof in cases involving prohibited images because of such technological advances.

What Kimler does not note, however, is direct language by the Court that imaging technology might be good and getting better, but it is implausible to conclude that it has actually arrived at the point of indistinguishability.

> The hypothesis is somewhat implausible. If virtual images were identical to illegal child pornography, the illegal images would be driven from the market by the indistinguishable substitutes. Few pornographers would risk prosecution by abusing real children if fictional, computerized images would suffice.

*Id.* at 254, 122 S.Ct. 1389.

We conclude that *Free Speech Coalition*, did not establish a broad, categorical requirement that, in every case on the subject, absent direct evidence of identity, an expert must testify that the unlawful image is of a real child. Juries are still capable of distinguishing between real and virtual images; and admissibility remains within the province of the sound discretion of the trial judge. The only two circuits to have considered the issue take the same position. *United States v. Deaton*, 328 F.3d 454, 455 (8th Cir. 2003) (per curiam) (citing *United States v. Vig*, 167 F.3d 443, 449-50 (8th Cir. 1999)); *United States v. Hall*, 312 F.3d 1250, 1260 (11th Cir. [2002]), *cert. denied*, 538 U.S. 954, 155 L. Ed. 2d 502, 123 S. Ct. 1646 (2002).

*Kimler*, 335 F.3d at 1142**.** In the *Deaton* case cited by the Tenth Circuit, the Eighth Circuit stated:

> In this case, the jury was not instructed that it could find Deaton guilty if the images found on his computer "appeared" to be child pornography. Instead, the jury was instructed that it needed to find that production of the images involved the use of a minor. Further, we have previously upheld a jury's conclusion that real children were depicted even where the images themselves were the only evidence the government presented on the subject.

*United States v. Deaton*, 328 F.3d 454, 455 (8th Cir. 2003) (reviewed for plain error).

More recently, in a case in which the defendant argued that the Government had not presented expert testimony to show that downloaded images depicted real children, the Fifth Circuit squarely rejected the argument that the Government failed to meet its burden of proof to establish that the images depicted real children. *United States v. Slanina*, 359 F.3d 356, 357 (5th Cir. 2004) (per curiam). Relying on *Kimler* and other cases, the Fifth Circuit held that the "Government was not required to present any additional evidence or expert testimony to meet the burden of proof to show that the images downloaded by Slanina depicted real children" and that the trier of fact "was capable of reviewing the evidence to determine whether the Government met its burden to show that the images depicted real children." *Id.*

Accepting the reasoning of the Fifth, Eighth, and Tenth Circuits, we conclude that the Government in this case provided sufficient evidence that the images were of actual children. Accordingly, there was sufficient evidence to convict Farrelly.

## III. Sentence

### A. Acceptance of Responsibility

The district court did not clearly err by denying Farrelly a reduction for acceptance of responsibility. "The sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility[,] . . . the determination of the sentencing judge is entitled to great deference on review." U.S.S.G. § 3E1.1, cmt. n. 5. Thus, "[t]he district court's determination regarding acceptance of responsibility must be sustained unless clearly erroneous." *United States v. Angel*, 355 F.3d 462, 476 (6th Cir. 2004). "To qualify for this reduction, Defendants [are] required to show by a preponderance of the evidence that they had accepted responsibility for the crime committed." *United States v. Thomas*, 74 F.3d 701, 716 (6th Cir. 1996).

A defendant may receive a reduction for acceptance of responsibility pursuant to § 3E1.1, if he can "clearly demonstrate[] acceptance of responsibility for his offense." U.S.S.G. § 3E1.1. "This adjustment is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse." *Id.* at cmt. n.2. The Guidelines do recognize an exception to this general rule:

> In rare situations a defendant may clearly demonstrate an acceptance of responsibility for his criminal conduct even though he exercises his constitutional right to a trial. This may occur, for example, where a defendant goes to trial to assert and preserve issues that do not relate to factual guilt (*e.g.,* to make a constitutional challenge to a statute or a challenge to the applicability of a statute to his conduct). In each such instance, however, a determination that a defendant has accepted responsibility will be based primarily upon pre-trial statements and conduct.

*Id.* Farrelly submits that his situation fits squarely within the exception outlined in comment two. Farrelly claims that it was imperative that he go to trial to preserve his argument regarding *Free Speech Coalition*. Farrelly notes that he raised the constitutional issue often and that, since the verdict, he has acknowledged that he was ashamed he had viewed child pornography on the Internet, has resigned from his position at the 911 center, and has voluntarily sought rehabilitative counseling.

Farrelly went to trial, however, not simply to raise issues implicated by *Free Speech Coalition*; he presented a claim of actual innocence. He vigorously attempted to implicate his coworkers by alleging that they set him up while he was on vacation in Ireland. When discussing the exception to acceptance of responsibility, this court has stated:

> [The defendant] did not go to trial simply to test the constitutionality or applicability of the civil rights laws under which he was convicted. Instead, he steadfastly contested his factual guilt . . . . Where [the defendant] has consistently denied essential elements of the offense and thus continues to contest his factual guilt, the district court did not commit clear error in declining to award him an offense-level reduction under § 3E1.1.

*United States v. Mahan*, 190 F.3d 416, 427 (6th Cir. 1999); *see also United States v. Wells*, No. 02-3419, 100 Fed. Appx. 440, 447, 2004 WL 1263126, at **6 (6th Cir. June 4, 2004) (determining that the district court did not clearly err by finding that the defendant did not accept responsibility even though constitutional issues were raised, because the defendant contested his factual guilt before and throughout the trial).

Farrelly's decision to argue that someone else accessed his computer put the Government to its proof on a theory of actual innocence. The argument regarding the possibly virtual nature of the children, while maintained, does not demonstrate that the district court erred by refusing to grant him a reduction for acceptance of responsibility. *See* U.S.S.G. § 3E1.1, cmt. n.2 (The exception applies "where a defendant goes to trial to assert and preserve issues that *do not relate to factual guilt*" (emphasis added)). Whether he accessed the images did relate to his factual guilt, and thus the district court did not clearly err by refusing to make an adjustment for acceptance of responsibility.

### B. Application of § 2G2.2

The district court however improperly sentenced Farrelly using U.S.S.G. § 2G2.2 for receipt of child pornography instead of § 2G2.4 for possession of child pornography. Section 2G2.4 provides for lighter sentencing for mere possession of child pornography: base level of 15 for "Possession of Materials Depicting a Minor Engaged in Sexually Explicit Conduct." In contrast, §2G2.2 provides for more severe sentencing for trafficking in such pornography. Section 2G2.2 provides a base level of 17, with possible increases not applicable under § 2G2.4, for

> Trafficking in Material Involving the Sexual Exploitation of a Minor; *Receiving*, Transporting, Shipping, or Advertising Material Involving the Sexual Exploitation of a Minor; Possessing Material Involving the Sexual Exploitation of a Minor with Intent to Traffic.

U.S.S.G. § 2G2.2 (emphasis added). The difficulty presented is that § 2G2.2 includes "receiving" in the string of actions for which the trafficking guideline applies. According to the district court, the evidence at trial "showed that the defendant repeatedly received child pornography from the Internet, but he did not save, print or trade the material. He did not keep or possess it." Thus, apparently because Farrelly never had possession of the images in the sense that he saved or printed them, the jury determined that Farrelly was not guilty of *possessing* child pornography but was guilty of *receiving* it. The district court, over the objection of defendant's counsel, sentenced Farrelly using § 2G2.2 for receipt, rather than under § 2G2.4 for possession.

The obvious intent of the Guidelines however is to punish less severely for possession than for trafficking. The activity for which Farrelly was convicted, including any relevant conduct, obviously partakes of the less culpable characteristics of possession than of the more culpable characteristics of trafficking. Every possession necessarily involves a receipt (apart from the even more culpable possibility of having created the pornography). Beyond the receipt inherent in every possession, there is no evidence of trafficking activity warranting a more severe sentence. Farrelly was an end user, and there is no indication that he ever trafficked, transported, shipped, or advertised such material. Only a sterile formalism could require us to apply the guideline for "receiving," clearly ensconced as it is in the context of trafficking, when there is no evidence of trafficking beyond the receipt that is inherent every time there is evidence of less culpable "possession."

The Guidelines do not require such an illogical result. The first step in ascertaining the applicable guideline is to "[r]efer to the Statutory Index (Appendix A) to determine the Chapter Two offense guideline, referenced in the Statutory Index for the offense of conviction." U.S.S.G. § 1B1.2(a). The Statutory Index directs a sentencing court to both §§ 2G2.2 and 2G2.4 when a defendant has been convicted of 18 U.S.C. § 2252A. U.S.S.G. Appendix A. Appendix A moreover specifies that "[i]f more than one guideline section is referenced for the particular statute, [the district court should] use the guideline most appropriate for the offense conduct charged in the count of which the defendant was convicted." Intro., U.S.S.G. Appendix

A.  In the context of this case, where the evidence of "receipt" would in every case amount as well to possession, the "most appropriate" guideline for the offense conduct is § 2G2.4 (possession).[6]

The reasoning of two cases in the Eleventh Circuit directly supports our conclusion.  In *United States v. Davidson*, 360 F.3d 1374 (11th Cir. 2004), the government lost an appeal in the Eleventh Circuit in which it argued that the district court mistakenly applied § 2G2.4 instead of § 2G2.2.  Davidson was convicted of receiving child pornography in violation of § 2252A(a)(2), and the district court sentenced him using § 2G2.4.  *Id.* at 1375.  Specifically, the district court had "reasoned that § 2G2.4 is applicable to all receipt of child pornography offenses *unless* there is specific evidence that the defendant distributed or intended to distribute the child pornography, in which case § 2G2.2 would be the appropriate sentencing guideline." *Id.* at 1376.  The government contended that because Davidson had been convicted of receiving child pornography, instead of the mere possession of it, then the receiving guideline—§ 2G2.2—should apply.  *Id.* at 1375-76.

The Eleventh Circuit—applying de novo review—determined that the district court properly used § 2G2.4 in applying the Guidelines when "the defendant was convicted of receipt of child pornography under 18 U.S.C. § 2252A(a)(2) without any evidence that the defendant received the pornography with an intent to traffic in the pornography." *Id.* at 1377 (emphasis omitted).  The court relied on its earlier *Dodds* decision, in which it had concluded that "'§ 2G2.2 was intended to apply where the government has shown that the defendant had received with the intent to traffic.'" *Id.* (quoting *United States v. Dodds*, 347 F.3d 893 (11th Cir. 2003)).

In *Dodds*, the defendant had been found guilty of possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B) and knowingly receiving obscene pictures in violation of 18 U.S.C. § 1462. *United States v. Dodds*, 347 F.3d 893, 895 (11th Cir. 2003).  Dodds complained that the district court erroneously sentenced him under § 2G2.2 instead of § 2G2.4 because there was no proof that he did more than simply possess the child pornography.  *Id.* at 900.  Dodds made the argument that every word in the title of § 2G2.2 relates to trafficking except "receiving" and that § 2G2.2, if read that broadly, would encompass virtually every child pornography case.  *Id.* at 901.  The court agreed that the title of § 2G2.2, as well as the cross-reference for §2G2.4, which requires the application of § 2G2.2 "[i]f the offense involved trafficking in material involving the sexual exploitation of a minor (including *receiving . . . material involving the sexual exploitation of a minor with the intent to traffic*)" (emphasis added), indicate that § 2G2.2 is aimed at traffickers of child pornography.  *Id.*  The court further noted that when the Sentencing Commission adopted the amendment that added § 2G2.4 to the Guidelines, the Sentencing Commission stated:

> This amendment inserts an additional guideline at § 2G2.4 to address offenses involving receipt or possession of materials depicting a minor engaged in sexually explicit conduct,

---

[6]The Sixth Circuit has never specifically addressed this issue, although it has referred to the difficulty in a case where the defendant was convicted under the parallel penalty provisions of § 2252(a)(2). *United States v. Boyd*, 312 F.3d 213, 216 (6th Cir. 2002).  Boyd claimed that the district court erroneously enhanced his sentence two points under § 2G2.2(b)(5) because a "computer was used for the transmission of the material." *Id.* at 215 (quoting U.S.S.G. § 2G2.2(b)(5)).  Boyd contended that this enhancement should only apply to defendants who used the computer to transmit the material and not to defendants whose use of the computer was limited to the receipt. *Id.* at 216.  We rejected this interpretation of § 2G2.2(b)(5), reasoning that "[s]ection 2G2.2, by its title, applies equally to receiving and shipping material involving the sexual exploitation of a minor, and the enhancement applies '[i]f a computer was used for the transmission of the material.'" *Id.*  However, the court specifically refrained from addressing the difficulty presented by the instant case:

> The specter of punishing identical conduct differently ["receiving " under § 2G2.2 and "possessing" under § 2G2.4] thus derives from the existence of these two different guidelines, not from the guidelines' treatment of computer use.  Boyd, however, does not argue that he should have been sentenced under § 2G2.4, so we have no reason to concern ourselves any further with this apparent inconsistency in the guidelines.

*Id.*

as distinguished from offenses involving trafficking in such material, which continue to be covered under § 2G2.2. Offenses involving *receipt or transportation of such material for the purpose of trafficking are referenced to § 2G2.2* on the basis of the underlying conduct (subsection (c)(2)).

*Id*. at 902 (quoting U.S.S.G. app. c amend. 372 (2003) (emphasis added)). Thus, after looking at the plain text and the history, the Eleventh Circuit concluded that § 2G2.2 should only be used to punish crimes related to trafficking in child pornography, and § 2G2.4 should be left for punishing those who "merely possess child pornography." *Id*.

We recognize that in contrast the Seventh Circuit has made some statements that support the Government's position that conviction for receipt requires sentencing under § 2G2.2. In the end, those statements do not persuade us of that conclusion. In *United States v. Ellison*, 113 F.3d 77, 78-79 (7th Cir. 1997), the defendant ordered and received pornographic videos depicting minors via the mail. He later pled guilty to one count of receiving child pornography in contravention of § 2252(a)(2),[7] and the district court sentenced him according to § 2G2.2. *Id*. at 79. Ellison appealed, claiming that the district court improperly applied § 2G2.2 instead of § 2G2.4. *Id*.

The Seventh Circuit affirmed Ellison's sentence under § 2G2.2. *Id*. at 81-82. In reaching that conclusion, the court first examined the four subsections of § 2252(a) and noted that the Guidelines specifically provided that violations of subsections § 2252(a)(1)-(3) are covered by § 2G2.2 and that the violation of subsection § 2252(a)(4) was covered by § 2G2.4. *Id*. at 79-80. That difference in treatment indicated to the court that only people convicted of § 2252(a)(4)—possession—should be sentenced using § 2G2.4. *Id*. at 80. The Seventh Circuit also noted that the original title of § 2G2.4 was "Receipt or Possession of Materials . . .", but that the "Receipt or" language was dropped. *Id*. at 81. The Seventh Circuit went on to state a rationale for the disparity in the sentencing provisions:

> The division of § 2252(a)'s subsections between Guideline § 2G2.2 and § 2G2.4, assigning only mere possession under § 2252(a)(4) a lower base offense level, indicates that Guideline § 2G2.2 is intended to punish conduct that creates or strengthens the market for child pornography. Ellison's conduct clearly fits this bill: even the receipt of the prohibited materials for personal use, without more, keeps producers and distributors of this filth in business. *See also United States v. Moore*, 916 F.2d 1131, 1137 (6th Cir.1990) (rejecting defendant's argument that "receiving" under § 2252(a)(2) is not intended to reach those who merely receive such materials for personal use).

*Id*.

More recently, though, the Seventh Circuit has reasoned somewhat differently. In *United States v. Sromalski*, 318 F.3d 748 (7th Cir. 2003), the defendant was only charged with possession in violation of 18 U.S.C. § 2252A(a)(5) although he could have been charged with receipt—18 U.S.C. § 2252A(a)(2). *Id*. at 749. The defendant subsequently pled guilty to possession, but the district court sentenced him using § 2G2.2 after noting a cross-reference from § 2G2.4. *Id*. at 749-50. The Seventh Circuit approved of the district court's decision to begin with § 2G2.4 because he was convicted only of possession. *Id*. at 750.

However, the court found that the district court improperly applied the cross-reference to § 2G2.2 because there was no evidence of trafficking. *Id*. at 750-51. Left with only the possession offense and no evidence of trafficking, the court found that the application of § 2G2.2 to the case was "too strained." *Id*.

---

[7] Section 2252(a)(2) and § 2252A(a)(2) both involve the knowing receipt and distribution of child pornography. *See also* S. Rep. No. 104-358 (1996) ("Section 2252A mirrors with respect to 'child pornography' . . . the prohibitions on the distribution, possession, receipt, reproduction, sale or transportation of material produced using an actual minor engaging in sexually explicit conduct contained in 18 U.S.C. 2252. The penalties in sections 2252 and 2252A would be identical.").

The *Sromalski* court found that there was a difference between "receipt" and "receipt with intent to traffic," and that the title of § 2G2.2 "makes it clear that it is directed at trafficking offenses, such as receiving, transporting, shipping, or advertising the prohibited materials . . . ." *Id.* at 750-53. Specifically the court held:

> Thus, before the cross-reference can be used in cases for which § 2G2.4 is the proper starting point, we conclude that something more than simple receipt must be shown: the government must show receipt, or one of the other described actions, with intent to traffic. Our conclusion applies only to cases in which the charges are limited to simple possession under § 2252A(a)(5), like Sromalski's.

*Id.* at 753.

The Seventh Circuit noted that the situation would be different if the defendant was, like Farrelly, convicted of receipt and not possession. *Id.* ("Where the government has charged and proven receipt as described in § 2252A(a)(2), the Guidelines themselves dictate that the cross-reference to § 2G2.2 is appropriate."). This dictum creates some tension in a case such as Farrelly's, where the defendant was presumably convicted of receipt of child pornography because he viewed images on the Internet but did not actually save, download, print, create, or distribute them. Although convicted of receipt, Farrelly clearly did not have the "intent to traffic" that the Seventh Circuit held was required to apply the cross-reference from § 2G2.4 to § 2G2.2.

We are persuaded more by the Seventh Circuit's analysis in *Sromalski* than by its decision in *Ellison*, although *Ellison* is concededly more directly on point. The fact that the jury acquitted Farrelly of "possession" but convicted him of "receipt" does not require us to apply the more severe guideline. The whole idea of the Guidelines is to increase consistency in sentencing, based on relevant factors including relevant culpable conduct. Once the defendant is convicted, and as long as the sentence is within the statutory range, the Guideline range is often determined based on factors independent of the elements of the offense of conviction. Contrary to the Seventh Circuit's dictum in *Sromalski*, reflecting its holding in *Ellison*, the Guidelines do not "dictate" that § 2G2.2 apply whenever conviction is for receipt; instead the Guidelines require application of the "most applicable" Guideline.

Section 2G2.2 is targeted at traffickers of child pornography and not the mere end user. In this case, although Farrelly viewed the images on the Internet, he did not save, print, or download them to qualify as possession. The Government argues in accordance with *Ellison* that the simple act of receiving the images furthers the market for child pornography and justifies the higher base offense level. The same could be said of many drug crimes, in which a possessor of cocaine necessarily received it and increased the market for it, unless, of course, he created it. But the penalties for simple possession of cocaine are lower than for possessing or receiving cocaine with the intent to traffic. *Compare* 21 U.S.C. § 844(a) (prescribing a maximum of one year for simple possession) *with* 21 U.S.C. § 841(b)(1) (imposing a ten year minimum for possession with the intent to distribute); *compare also* U.S.S.G. § 2D2.1 (base offense level of 6) *with* U.S.S.G. § 2D1.1 (base offense level of 12 to 38 depending on the quantity).

Furthermore, it is hard to imagine when § 2G2.4 would apply if possession by receipt is appropriately considered under § 2G2.2. If a possessor of child pornography did not receive it, the remaining inference is that the possessor created it. The production of such materials, of course, is its own crime and carries stiffer penalties than trafficking. *See* 18 U.S.C. §§ 2251, 2260; *see also* U.S.S.G. § 2G2.1 (base offense level of 27). As the Seventh Circuit said in *Sromalski*, "[t]he worst problem with this reading is that it effectively reads § 2G2.4 out of the Guidelines. Virtually everything § 2G2.4 covers would be covered by something else—usually § 2G2.2, but sometimes § 2G2.1 (production)." *Sromalski*, 318 F.3d at 753.

Farrelly, as a mere end user of the material, should not have been sentenced using the guideline for traffickers of child pornography. Thus, Farrelly's sentence must be vacated and remanded for resentencing.

### C.  Enhancement under § 2G2.2(b)(4)

The Government has cross-appealed in this case, claiming that the district court erred by not applying a five-level enhancement under § 2G2.2(B)(4) for engaging "in a pattern or activity involving the sexual abuse or exploitation of a minor." U.S.S.G. § 2G2.2(b)(4). Since Farrelly should have been sentenced under § 2G2.4 instead of § 2G2.2 and because there is not a parallel provision for the enhancement under § 2G2.4, we affirm the judgment of the district court with regard to the application of § 2G2.4(b)(4).

## IV.  Conclusion

We AFFIRM the judgement of the district court with regard to Farrelly's conviction, but we REVERSE and REMAND the case for resentencing consistent with this opinion.