**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 13a0492n.06

No. 11-4412

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
*May 16, 2013*
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| Plaintiff-Appellee, | ) | |
| v. | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO |
| JEREMY R. EDINGTON | ) | |
| Defendant-Appellant. | ) | |

Before: BOGGS, GIBBONS, and COOK, Circuit Judges.

**JULIA SMITH GIBBONS, Circuit Judge.** In July 2010, Jeremy Edington went to a Franklin County, Ohio restaurant to meet a person whom he believed to be a fourteen-year-old boy he had encountered on the internet. The "boy" was actually an undercover officer who stopped Edington near the restaurant. During an interview following the stop, Edington admitted that he solicited sex from the boy and that he possessed child pornography. He was arrested and later indicted by a grand jury. In July 2011, a jury convicted Edington of one count of coercion and enticement in violation of 18 U.S.C. § 2422(b), three counts of receipt of visual depictions in violation of 18 U.S.C. § 2252(a)(2), and one count of possession of visual depictions in violation of 18 U.S.C. § 2252(a)(4)(B). He now appeals his convictions. For the reasons that follow, we affirm.

## I.

On June 14, 2010, Corporal Dan Johnson, a member of the Franklin County Internet Crimes Against Children Task Force, found an ad titled "Young Boys?" while searching the personals section of Craigslist. The ad stated that the person who posted the ad, later identified as Edington, was "looking for some [boys] near my age and below to play/fool around." Johnson responded to the ad using the undercover persona "Jake Bloom," a fourteen-year-old boy. Edington, using the screen name "Leonard Vogel," sent "Jake" an email inviting him to chat. Edington contacted "Jake" the next day via instant message and engaged him in a sexually explicit conversation.

On July 26, 2010, Edington contacted "Jake" again via instant message. Edington asked "Jake" if he would meet him for the purpose of engaging in sexual activity. They arranged to meet later that day at a Steak 'n Shake near "Jake's" fictitious home. Edington told "Jake" that he would be driving a black car and would park behind the restaurant.

Police set up surveillance in the area near the Steak 'n Shake. At the scheduled time, Edington arrived in a black Chevy Malibu and parked behind the restaurant, where he sat for several minutes. Edington then drove in a loop around the restaurant, exited the parking lot, and went to a gas station across the street, where an officer in a marked police cruiser stopped Edington at Johnson's request.

Johnson approached Edington, identified himself as a police officer, and asked what Edington was doing in the area. Edington admitted that he was there to see a boy whom he had met online, but he said that he wanted to warn the boy that what he was doing was dangerous. Johnson advised Edington of his *Miranda* rights, and Edington signed a waiver form. Edington then

2

consented to a search of his car. Johnson found a Blackberry cell phone during the search, which Edington gave him permission to examine. The first thing that Johnson saw was an instant message that Edington had sent to "Jake" a few minutes earlier asking him where he was.

Johnson asked Edington if he had ever viewed child pornography, and Edington admitted that he had some on his home computers. Edington gave Johnson consent to search his residence. The officers drove Edington to his home, where Edington signed a consent-to-search form. Officers searched the home and seized a laptop and a desktop computer. Then they transported Edington to the Franklin County Sheriff's Office detective bureau, where Johnson interviewed Edington.

During the interview, which was recorded, Edington admitted that he posted the ad on Craigslist, that he used the screen name "Leonard Vogel," that he initiated the conversations with "Jake," and that he propositioned him for sex. Edington said that he had been downloading and viewing child pornography since he was sixteen years old and that he had about forty such videos on his computers. Edington explained how he searched for and downloaded pornography involving young boys using the file-sharing program LimeWire.

Edington was arrested on August 3, 2010. On June 30, 2011, a grand jury issued a superseding indictment charging Edington with one count of coercion and enticement (Count One), three counts of receipt of visual depictions (Counts Two, Three, and Four), and one count of possession of visual depictions (Count Five). On July 26, 2011, Edington went to trial. The jury found Edington guilty on all counts. Edington was sentenced to 120 months' imprisonment on Count One, sixty months' imprisonment on Counts Two, Three, and Four (to run concurrently with the sentence imposed on Count One), and thirty-six months' imprisonment on Count Five (to run

consecutive to the sentences imposed on Counts One, Two, Three, and Four). He also was sentenced

to supervised release of fifteen years and ordered to pay a $500 special assessment. Edington timely

appealed.

## II.

### A.

First, Edington contends that the government presented insufficient evidence to support his

conviction on Count One. While Edington frames his argument in terms of sufficiency of the

evidence, his argument is best characterized as a challenge to the sufficiency of the superseding

indictment.

We review the sufficiency of an indictment *de novo*.[1] *United States v. McAuliffe*, 490 F.3d

526, 531 (6th Cir. 2007). An indictment "must be a plain, concise, and definite written statement

of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). "'[A]n indictment

is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant

of the charge against which he must defend, and, second, enables him to plead an acquittal or

conviction in bar of future prosecutions for the same offense.'" *United States v. Anderson*, 605 F.3d

---

[1]Edington did not make a pre-trial motion to dismiss the superseding indictment on the ground that it was insufficient, but he raised the same argument that he makes on appeal at trial in the context of a motion for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29. Because Edington raised his argument before the district court, *de novo* review is appropriate. *Cf. United States v. Gatewood*, 173 F.3d 983, 986 (6th Cir. 1999) (observing that where a defendant fails to challenge the sufficiency of an indictment until appeal, the indictment is "construed liberally in favor of its sufficiency" and "unless the defendant can show prejudice, a conviction will not be reversed . . . unless the indictment cannot within reason be construed to charge a crime").

404, 411 (6th Cir. 2010) (quoting *Hamling v. United States*, 418 U.S. 87, 117 (1974)). We employ

"'a common sense construction in determining whether an indictment sufficiently informs a

defendant of an offense.'" *United States v. Maney*, 226 F.3d 660, 663 (6th Cir. 2000) (quoting *Allen*

*v. United States*, 867 F.2d 969, 971 (6th Cir. 1989)).

Section 2422(b), which criminalizes both the completed offense of enticement and also

attempt, states:

> Whoever, using the mail or any facility or means of interstate or foreign commerce,
> or within the special maritime and territorial jurisdiction of the United States
> knowingly persuades, induces, entices, or coerces any individual who has not attained
> the age of 18 years, to engage in prostitution or any sexual activity for which any
> person can be charged with a criminal offense, *or attempts to do so*, shall be fined
> under this title and imprisoned not less than 10 years or for life.

18 U.S.C. § 2422(b) (emphasis added).

Count One of Edington's superseding indictment alleged:

> On or about July 26, 2010, in the Southern District of Ohio, JEREMY A.
> EDINGTON did knowingly use *or attempt* to use a means or facility of interstate
> commerce, that is, the internet and a cellular phone, to persuade, induce or entice an
> individual who had not attained the age of 18 years, to engage in sexual activity for
> which said defendant can be charged with a criminal offense.

(emphasis added).

Edington observes that the "attempt" language appears in a different place in the superseding

indictment than it does in the statute. He contends that the word "attempt" in the superseding

indictment qualifies only "to use a means or facility of interstate commerce," not all the elements

of the offense that follow the word "attempt." He argues that, based on the language of the

superseding indictment, he believed that he was accused of *using or attempting to use a means or*

*facility of interstate commerce* to entice an actual minor, not *attempting to entice a minor*. Edington argues that because the government did not present evidence that an actual minor was involved in the events underlying Count One, he could not be convicted of the offense charged in the superseding indictment.

Edington's argument fails for several reasons. As an initial matter, Edington's argument is based on the mistaken assumption that "the offense [he] was required to defend against was the one in the indictment, the charging document[,] and not [the] one contained in a cited statute listed in the indictment." This is incorrect. Edington was charged with violating Section 2422(b). Section 2422(b) criminalizes both enticement and attempted enticement, and we have held that an actual minor need not be involved in order to sustain a conviction under that section. *See United States v. Hackworth*, 483 F. App'x 972, 976-78 (6th Cir. 2012); *United States v. Fuller*, 77 F. App'x 371, 378 (6th Cir. 2003). The superseding indictment did not alter the elements that the government was required to prove in order to show that Edington violated Section 2422(b). The only relevant question is whether the superseding indictment was sufficient to notify Edington of the offense against which he was to defend.

Count One of the superseding indictment fairly informed Edington of the offense with which he was charged—enticement or attempted enticement in violation of Section 2422(b)—and conveyed the essential elements of the crime. The fact that the "attempt" language appears in a different place in the superseding indictment than it does in the statute makes no difference here. First, the "attempt" language appears after "knowingly" and before the other elements of the crime. "Attempt" can fairly be read to modify all of the elements that follow the word, not just the "means or facility

6

of interstate commerce" element. Second, even if the "attempt" language in the superseding indictment is somewhat imprecise, this does not render the superseding indictment insufficient. "[D]ue process does not require a recitation of the statute; it requires only that the [indictment] as a whole set forth the critical details of the offense charged." *United States v. Lentsch*, 369 F.3d 948, 953 (6th Cir. 2004); *see also United States v. Martinez*, 981 F.2d 867, 872 (6th Cir. 1992) (holding that an indictment that omitted the *mens rea* element was sufficient because it cited the applicable statutes, which informed the defendant of the elements of the charged offenses). Third, given the circumstances in which this case arose, a reasonable defendant would have realized that he was accused of attempting to entice a minor (who turned out to be an undercover agent), not attempting to use a means or facility of interstate commerce to entice an actual minor. The government submitted a detailed affidavit in support of the complaint outlining its theory of the case. Edington was not prejudiced in his defense by the language of Count One. The superseding indictment was sufficient.

**B.**

Edington's second argument, that the district court improperly denied his motion for a judgment of acquittal on Count One, is premised on his first argument. Edington contends that because the government offered no proof that he targeted an actual minor, the evidence was insufficient to sustain his conviction.

"We review de novo the denial of a motion for acquittal based on sufficiency of the evidence." *United States v. Blanchard*, 618 F.3d 562, 574 (6th Cir. 2010). However, "a defendant claiming insufficiency of the evidence bears a very heavy burden." *United States v. Abboud*, 438

F.3d 554, 589 (6th Cir. 2006) (citation and internal quotation marks omitted). We must affirm the district court's decision if "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). "We may not 'weigh the evidence presented, consider the credibility of witnesses, or substitute our judgment for that of the jury.'" *United States v. Graham*, 622 F.3d 445, 448 (6th Cir. 2010) (quoting *United States v. M/G Transp. Servs., Inc.*, 173 F.3d 584, 588-89 (6th Cir. 1999)).

The government presented overwhelming evidence that Edington attempted to entice a minor in violation of Section 2422(b). The jury heard Johnson's testimony and saw emails and instant messages between Edington and "Jake" and video clips of Johnson's interview with Edington in which Edington essentially confessed to the crime. The government was not required to present evidence that an actual minor was involved in order for Edington to be convicted under Section 2422(b). *See Hackworth*, 483 F. App'x at 976-78 (holding that a conviction under Section 2422(b) does not require the involvement of a minor); *United States v. Hughes*, 632 F.3d 956, 962 (6th Cir. 2011) (upholding the defendant's conviction under Section 2422(b) where the defendant attempted to entice an undercover agent posing as a fourteen-year-old girl); *United States v. Hart*, 635 F.3d 850, 859 (6th Cir. 2011) (same); *Fuller*, 77 F. App'x at 378 (holding that a defendant may be charged with violating Section 2422(b) even though he is mistaken about the true age of the person with whom he communicated). Because the evidence, viewed in the light most favorable to the government, supports Edington's conviction on Count One, the district court did not err in denying Edington's motion for a judgment of acquittal.

**C.**

Edington raises two challenges to the district court's jury instructions. Trial courts have broad discretion in drafting jury instructions and, as a result, we review jury instructions only for abuse of discretion. *United States v. Carson*, 560 F.3d 566, 578 (6th Cir. 2009). "[W]e review the instructions as a whole, in order to determine whether they adequately informed the jury of the relevant considerations and provided a basis in law for aiding the jury in reaching its decision." *United States v. Frederick*, 406 F.3d 754, 761 (6th Cir. 2005). We will reverse a judgment based on an improper jury instruction "'only if the instructions, viewed as a whole, were confusing, misleading, or prejudicial.'" *United States v. Harrod*, 168 F.3d 887, 892 (6th Cir. 1999) (quoting *Beard v. Norwegian Caribbean Lines*, 900 F.2d 71, 72-73 (6th Cir. 1990)).

First, Edington objected at trial to the placement of the word "attempt" in the jury instructions on Count One, consistent with his theory—which we reject—that the slightly different wording of Count One and Section 2422(b) is significant. On appeal, he argues that the wording of the jury instructions should have reflected the language of the superseding indictment, not the statute.

The district court instructed the jury as follows:

> In order for you to find the defendant guilty of Count One, the charge of coercion and enticement of a minor, the United States must prove each of the following elements beyond a reasonable doubt:
>
> First: That the Defendant used a facility of interstate commerce;
>
> Second: To knowingly persuade, induce or entice, or to attempt to persuade, induce or entice;
>
> Third: Any individual who was younger than eighteen-years old;

9

Fourth: To engage in sexual activity for which any person can be charged with a criminal offense.

A violation of the statute only requires a finding that the government has proved that the defendant had an intent to persuade or attempt to persuade an individual who is younger than eighteen years to engage in sexual activity, not the performance of the sexual acts themselves.

The district court did not abuse its discretion by instructing the jury in this manner. The instructions properly track the language of Section 2422(b). They inform the jury that both enticement and attempted enticement violate the statute. The instructions were not confusing, misleading, or prejudicial, and, therefore, they do not provide a basis for overturning Edington's conviction on Count One.

Second, Edington objected at trial to the instruction regarding his knowledge that the videos he was charged with receiving were pornographic images of children. When Edington objected, the district court struck the phrase "knew or believed" from the instructions and replaced it with "had knowledge," clarifying that Edington had to know that he was receiving child pornography in order to be convicted of Counts Two, Three, and Four. On appeal, Edington's argument, in its entirety, is:

The court's instruction to the jury was improper. On the issue of Mr. Edington's knowledge the instructions failed to clearly instruct the jury that to convict it must find, beyond a reasonable doubt, not only that the seven videos were authentic, but that Mr. Edington knew, not guessed, not hoped, not desired, them to be authentic. It is insufficient under the charge in counts two through four for a jury to merely find that the videos charged were authentic.

Edington received the instruction that he requested at trial. On appeal, he fails to explain exactly why he thinks that the jury instructions nevertheless were deficient on this point. Edington

fails to develop this argument, and, therefore, we find that he has waived it. *See El-Moussa v. Holder*, 569 F.3d 250, 257 (6th Cir. 2009) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in a skeletal way, leaving the court to put flesh on its bones.") (internal quotation marks and alteration omitted).

**D.**

Edington argues that the pornographic videos that were admitted at trial were not properly authenticated under Federal Rule of Evidence 901. He contends that the government failed to produce a witness to the creation of the videos who could testify that the videos actually depicted children, and, therefore, the videos should not have been admitted. Edington conflates two issues: the admissibility of the videos and the weight that the jury should have assigned to them.

In order for a piece of evidence to be admitted, the proponent of the item "must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). We have held, in a different context, that a party seeking to admit a video need not produce evidence of how the video was made in order to properly authenticate it. *United States v. Damrah*, 412 F.3d 618, 628 (6th Cir. 2005). In *Damrah*, the defendant was convicted of unlawfully obtaining citizenship in violation of 18 U.S.C. § 1425 by making false statements in a citizenship application and interview regarding his affiliation with organizations that support terrorism. *Id.* at 620-21. At trial, the government introduced videos that were seized from the home and offices of the president of one of the organizations depicting Damrah speaking at the organization's fund-raisers. *Id.* at 621. Damrah conceded that the government properly handled the videos after they

were seized but argued that the videos were inadmissible because the government did not present evidence that the videos fairly and accurately depicted the events at issue. *Id.* at 628. We held that "[e]vidence of how the tapes were made and handled prior to their seizure" was not required for admission and that the district court did not abuse its discretion in ruling "that the tapes were self-authenticating, and also to a degree corroborated" by other evidence. *Id.* (internal quotation marks omitted).

In child pornography cases, the authentication requirement applies "essentially the same way it does to any similar item of evidence in any type of case." *United States v. Berringer*, 601 F. Supp. 2d 976, 980 (N.D. Ohio 2008). The government must produce evidence sufficient to support a finding that the item is what the government claims it is—in this case, a video that the defendant received or possessed. This can be done by offering testimony from an investigator who was present when the video was retrieved and can describe the process used to retrieve it. *See United States v. Salcido*, 506 F.3d 729, 733 (9th Cir. 2007) (holding that pornographic videos and images were properly authenticated where the government presented "detailed evidence as to the chain of custody, specifically how the images were retrieved from the defendant's computers"); *Berringer*, 601 F. Supp. 2d at 980 (holding that pornographic images could be authenticated by "testimony of a witness who was present and observed the procedure by which the evidence was obtained from [the defendant's] computers"). The government need not "*pre*-screen, or *pre*-authenticate, child pornographic images to make sure that they are indeed real" before they are admitted. *United States v. Sheldon*, 223 F. App'x 478, 483 (6th Cir. 2007). "[T]he government is generally allowed to present the images, and then must simply put on proof that they depict real, and not virtual,

children." *Id.* "[A]s with any other evidence, the government's contention that the images are real may be properly credited or discredited by a jury." *Id.*

In this case, the government offered testimony from Johnson, who explained how he recovered the files from Edington's computer. Johnson's testimony was further corroborated by Edington's explanation, after he was stopped, of how he downloaded pornography and where the files were located on his computer. Like the defendant in *Damrah*, Edington does not dispute that the videos at issue were properly handled after they were seized. Thus, the district court did not abuse its discretion by admitting the evidence. *See United States v. Davis*, 577 F.3d 660, 666 (6th Cir. 2009) (noting that evidentiary rulings are reviewed for abuse of discretion, which will only be found "upon a definite and firm conviction" that the district court "committed a clear error of judgment") (internal quotation marks omitted).

Edington's argument that the government failed to prove that the videos depict actual minors goes to the sufficiency of the evidence supporting his convictions, not to the admissibility of the videos. *Salcido*, 506 F.3d at 733; *see also United States v. Nolan*, 818 F.2d 1015, 1017 (1st Cir. 1987) ("Whether the pictures were the kind of visual depictions the law forbids, *i.e.*, ones involving the 'use' of actual minors engaging in sexually explicit conduct, 18 U.S.C. § 2252(a)(2)(A), goes more properly to whether the government presented sufficient evidence to prove all the elements of its case than to 'authentication.'"), *overruled on other grounds by United States v. Hilton*, 363 F.3d 58 (1st Cir. 2004); *Berringer*, 601 F. Supp. 2d at 979 ("The Government's ultimate ability to establish that the images depict actual children is not an issue of evidence authentication, but one going directly to the Government's burden of proof.").

In child pornography prosecutions, the government must show that the videos and images at issue depict actual children. *See United States v. Farrelly*, 389 F.3d 649, 653 (6th Cir. 2004) (reasoning that this is a fair inference based on *Ashcroft v. Free Speech Coalition*, 535 U.S. 234 (2002), which struck down provisions of the Child Pornography Prevention Act of 1996 as overbroad because they targeted sexually explicit images that appeared to depict minors but were not produced using real children), *superseded by statute on other grounds as recognized in United States v. Williams*, 411 F.3d 675, 677 n.1 (6th Cir. 2005). "The question of whether the images are virtual or real is one of fact, to be determined by evidence about which argument can be made to the jury." *Id.* at 654. In *Farrelly*, we held that the government met its burden because the jury had access to the photographs, the defense never challenged the reality of the children, and the jury was clearly instructed that it had to find that the images were of real children. *Id.* at 653.

In this case, as in *Farrelly*, the videos in question were presented to the jury, which had the opportunity to assess whether real children appeared in the videos. Edington did not contest at trial that real children appeared in the videos. Therefore, the government presented sufficient evidence to support Edington's convictions on Counts Two through Five. *See Jackson*, 443 U.S. at 319 (explaining that when a defendant makes a sufficiency of the evidence challenge, the district court's decision must be affirmed if "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt"). Moreover, here as in *Farrelly*, the jury was aware of its obligation to find that the videos depicted real children because the jury instructions were explicit on that point—a point

14

emphasized in *Farrelly* although it relates more to the absence of a possibility of juror confusion than to the sufficiency of the evidence.

**E.**

Finally, Edington makes two arguments that he failed to raise before the district court. He argues that the statutes under which he was convicted are unconstitutional because Congress lacks the power to regulate the internet as a means or facility of interstate commerce under the Commerce Clause. He also contends that Section 2252(a)(2), which prohibits the knowing receipt of "any visual depiction" of minors engaged in sexually explicit conduct, is ambiguous as to the appropriate unit of prosecution. As a general rule, an issue not presented to the district court is not properly before this court. *Foster v. Barilow*, 6 F.3d 405, 407 (6th Cir. 1993); *see also United States v. Chesney*, 86 F.3d 564, 567 (6th Cir. 1996) (noting that failure to challenge the constitutionality of a statute in district court ordinarily precludes consideration of the argument on appeal). We may exercise discretion to review an issue that was not raised in the district court only "when the bar against review would produce a plain miscarriage of justice or in other exceptional cases or particular circumstances." *United States v. Suarez*, 263 F.3d 468, 487 (6th Cir. 2001) (internal quotation marks omitted). Edington does not contend that a miscarriage of justice will result if his arguments are not considered, and he identifies no exceptional circumstances justifying review of these issues. Therefore, we decline to consider these new arguments.

**III.**

For these reasons, we affirm Edington's convictions.